Lybarger Unemployment Compensation Case.
Department of Labor and Industry, Bureau of
Employment Security, Appellant, *v.*
Unemployment Compensation
Board of Review.

Argued March 9, 1964.  Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Morley W. Baker,* Assistant Attorney General, with
him *Walter E. Alessandroni,* Attorney General, for De-
partment of Labor and Industry, Bureau of Employ-
ment Security, appellant.

*Sydney Reuben,* Assistant Attorney General, with
him *Walter E. Alessandroni,* Attorney General, for Un-
employment Compensation Board of Review, appellee.

*Jerome H. Gerber,* with him *Sidney G. Handler,* for claimants, intervening appellees.

OPINION BY WATKINS, J., June 11, 1964:

This is an appeal by the Department of Labor and Industry of the Commonwealth of Pennsylvania, Bureau of Employment Security, from the decision of the Unemployment Compensation Board of Review awarding benefits to the claimant, Freeman Lybarger. The Bureau had held that the claimant was ineligible for benefits under §402(b)(1) and §401(d) of the Unemployment Compensation Law, 43 PS §802(b)(1) and §801(d), in that he voluntarily left his work without cause of a necessitous and compelling nature; and found that he was unavailable for work.

The Referee found him ineligible under §401(d) and eligible under §402(b)(1), and affirmed the order of the Bureau as modified. The Board reversed, holding the claimant entitled to benefits. The claims of 29 employees of Talon Manufacturing Company, who became unemployed under similar circumstances, are dependent upon the ultimate decision in this case.

The claimant is an employee of Talon and a member of Local No. 591, I.L.G.W.U. The employer and the union executed a labor agreement which, in part, provided as follows:

"Section 2: Working Schedule (a) Beginning in January, 1961, the Chain Machine personnel shall be employed as follows:

"1. In January, the Company will adjust personnel, retaining by seniority the number of operators required to maintain production at the level of a normal 40-hour week.

"2. Employees with sufficient seniority to remain at work shall be kept as operators until the pay period when their gross earnings received from the company since January amount to five thousand dollars ($5,-

000), plus-or-minus fifty dollars ($50). Such operators will then go on layoff for the remainder of the year or until all younger operators have been recalled, and additional ones are required in seniority order.

"3. Younger operators on layoff will be recalled in seniority order in sufficient number to maintain production at the level of a normal 40-hour work week for the remainder of the calendar year.

"4. At the first of the year, the younger operators will be laid off and older operators recalled in seniority order from layoff to maintain the schedule at a normal 40-hour work week. These operators will continue working until they have received gross earnings of five thousand dollars ($5,000), plus-or-minus fifty dollars ($50), when they will be laid off and younger operators called in, as set forth in Items 2 and 3, above."

The claimant reached the five thousand dollar wage limitation set forth in the agreement on about October 2, 1961 and was thereafter laid off in accordance with the agreement and an employee with less seniority took his place. The Board held that the claim was governed by the case of *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A. 2d 906 (1959) ; that "The Supreme Court observed that the factual matrix of each case is determinative of a particular claimant's eligibility for benefits, and should be the Board's guiding principle"; and that "The factual matrix in this case at the time of separation is that the claimants have been separated from their jobs involuntarily."

In the *Gianfelice* case, supra, where the employer exercised its option under a labor management agreement to lay off his employee who has reached the age of 68, the question before the Court was whether the claimant was disqualified as a voluntary quit. This Court held he was; the Supreme Court reversed, saying: "The major premise of the Superior Court that an

employee is bound by his union's agreement with his employer as expressed in a collective bargaining agreement is unexceptionable on its face. However, in the present context the Superior Court has used this premise to disqualify persons for benefits under the Unemployment Compensation Law who otherwise would be eligible . . .".

A collective bargaining agreement could not abrogate any rights which accrued to an employee by the legislative mandate expressed in the Unemployment Compensation Law. "This is one reason why the collective bargaining agreement should not control in determining the eligibility of a retired employee for unemployment compensation, rather, the factual matrix at the time of separation should govern . . .". *Gianfelice* case, supra, at page 551. The law itself renders invalid any agreement by an employee to waive or release any of his rights under the act. Section 701 of the Unemployment Compensation Law, 43 PS §861.

The opposite principle has also been decided that the employer and employee cannot determine by agreement that an employee shall receive benefits, when under the facts and the law he is not entitled to such payments. The Commonwealth has an interest in the unemployment compensation fund and it is the duty of the Unemployment Compensation authorities to protect the fund against dissipation by those not entitled to payments under the law. *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410 (1958).

The questions before this Court on this appeal are (1) whether Lybarger is involuntarily unemployed under all the facts and (2) whether under all the facts Lybarger is available for work and a part of the labor market? The Board answered both questions in the affirmative.

In the union dues case, *Williams Unemployment Compensation Case,* 193 Pa. Superior Ct. 320, 164 A.

2d 42 (1960), we said at page 325: "In view of the now established rule of the Gianfelice case, supra, and after a careful examination of the above language contained in the act in question, I am unable to read into this language a legislative intention to deny benefits to an employee as a 'voluntary quit' for failure to meet the terms of a collective bargaining agreement and so, create the hardship this act was intended to alleviate."

And in the same case, at page 329: "As Justice COHEN said in the Gianfelice case, at page 551: 'This is one reason why the collective bargaining agreement should not control in determining the eligibility of a retired employee for unemployment compensation; rather, the factual matrix at the time of separation should govern. This was the position taken by Judge (now Justice) BRENNAN in Campbell Soup Co. v. Board of Review, 13 N.J. 431, 100 A. 2d 287 (1953), wherein the New Jersey Supreme Court found the claimant eligible for benefits. Viewed in this light, the questions here become simply (1) did Gianfelice cease working voluntarily as a matter of fact, and (2) was Gianfelice available for work thereafter? Since the answers on the record are (1) no, and (2) yes, Gianfelice is entitled to benefits.' "

We have held that we can look at the bargaining agreement to determine the reason for the discharge as we have looked at the bargaining agreement to determine the relationship between payment and time. *Piestrak Unemployment Compensation Case,* 404 Pa. 527, 537, 172 A. 2d 807 (1961).

Before discussing the specific questions raised by this appeal let us look at how this agreement must work to accomplish its admirable purpose "to share the work" and at the same time maintain a full crew of trained personnel to keep this successful business operation on a full time forty hour a week schedule.

Let us take an example to see how the agreement was intended to work to accomplish its purpose: A, the senior employee, reached the income of five thousand dollars on October 1, 1963. In accordance with the agreement he was laid off and for approximately twelve weeks he would receive $40 per week or $480, which, when added to his industrial income makes his calen-- dar year earnings $5480. He knew, and the agreement provides that he will return to work on January 1, 1964. B, the junior employee, would take his place on October first and earn to January first approximately. $1500 when he, under the agreement would be laid off. It is evident that he was unemployed at the time he took the job and if, as he could very well have been, unemployed since January 1, 1963 could have collected his full thirty weeks of unemployment compensation. If he had only one quarter of employment in the last quarter of 1962 as he has in the last quarter of 1963, he would still be entitled to thirty times thirty-five dollars or $1050 to be added to the $1500 he earned from his employment or a total of $2550 for the calen-. dar year.

When he was laid off on January 1, 1964, he has established earnings of $1500 in his last quarter and if he secures no intervening employment can again collect thirty times thirty-five dollars in unemployment compensation or something more than that under the schedule provided in the act of 1964. It is quite possible, therefore, that the Commonwealth in the case of these two supposititious employees is subsidizing this "share the work" plan by $1530 annually.

The fundamental social purpose of the Unemployment Compensation Law is to provide relief from the rigors of unemployment compensation. Persons unemployed through their own fault are not within the intendment of the Unemployment Compensation Law. The first question, therefore, raised by this appeal is:

Did Lybarger cease working voluntarily? We find the answer to this question to be "Yes".

In the *Gianfelice* case, supra, there was a final and complete termination of the employer-employee relationship; in this case it is a fact that the lay-off is for a three month period during which the employer-employee relationship continues under the agreement, including all the fringe benefits contained in it. At best, it is a temporary suspension of employment.

In the *Gianfelice* case, supra, the retention or dismissal of the claimant was optional with the employer. Here, when the claimant's income reached $5000 he must be arbitrarily laid off or perhaps a better word would be suspended for the three month period and a junior workman must be arbitrarily put in his place, in the same job, doing the same work for the same period. In the *Gianfelice* case, supra, the record shows that the 68 year old claimant did not want to retire and was willing, able and desirous to continue work, while in this case the "share the work" scheme called for the mutual consent of the employer and the employee to the suspension.

The claimant had full knowledge that on the date he earned $5000 he was to be laid off until January first of the following year in order to "share the work" with a junior employee and to further the purpose of the system of "job security" as set forth in the labor management agreement. Although we agree that the purpose may be an admirable one it was not the intention of the legislature to use the unemployment compensation fund to subsidize such a plan. To contend that the claimant's unemployment was due to no fault of his own is to fly into the face of ordinary common sense.

It seems, therefore, that in this situation where it is admitted that the claimant was not laid off because of lack of work or work conditions or for any of the

usual reasons that, in order to arrive at the factual situation that resulted in this unemployment, we must look to the agreement. We do not do so to use it as a waiver for any rights this claimant may have under the law but to help determine factually whether a situation is being created so that he may receive benefits which the law precludes. The factual matrix at the time of the separation is a mutual agreement between the employer and the claimant that the employer will lay the claimant off temporarily and rehire him on January first to accomplish the purpose of a "share the work" plan. This is not the involuntary unemployment contemplated by the act.

The second question raised by this appeal is: Was Lybarger available for work thereafter? We find the answer to this question to be "No". The availability in question is for the three month period.

Section 401(d) of the Unemployment Compensation Law, 43 PS §801(d), provides that he must be able to work and be available for suitable work. There is no question that he is able to work and is available, within certain limitations, for work. The question here is whether the limitations have taken him out of the labor market. *Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct. 548, 45 A. 2d 898 (1946). "Availability for work" requires that a claimant should actually and currently be attached to the labor force. *Baker Unemployment Compensation Case*, 193 Pa. Superior Ct. 460, 165 A. 2d 103 (1960). In the *Baker* case, supra, the claimant was referred to a position and informed her prospective employer that she was expecting a recall by her former employer. Because of this she did not receive the job. One may render himself unavailable for work by conditions and limitations imposed by him. *Bates Unemployment Compensation Case*, 191 Pa. Superior Ct. 266, 156 A. 2d 589 (1959).

Students whose employment was limited to summer vacations are not entitled to unemployment compensation. We held that as the student's employment was limited to summer vacations, his primary objective was to obtain a college education and he was not generally and realistically attached to the labor market. *DeMilo Unemployment Compensation Case,* 193 Pa. Superior Ct. 201, 163 A. 2d 688 (1960). In the instant case the period of suspension was three months and it was for the purpose of establishing a "Share the work" plan.

Any prospective employer would immediately realize the time restriction placed by the claimant on his availability for work. A claimant's willingness to be employed conditionally does not meet the test of availability. *Majoris Unemployment Compensation Case,* 192 Pa. Superior Ct. 269, 162 A. 2d 86 (1960).

Lybarger testified that it was his understanding that he would be recalled after the first of the year. There is no question that under the facts in this case his availability in the labor market is limited to the recall date of January first so that prospective employers would be reluctant to employ him even if we assume that he was sincerely seeking employment.

Under the facts in this case the discharge is in effect a temporary layoff. The employer-employee relationship continues and the recall date is fixed. Temporary layoffs afford no basis for the claim that he is unemployed. *Greek Unemployment Compensation Case,* 183 Pa. Superior Ct. 76, 127 A. 2d 799 (1956). We held in *Sparano Unemployment Compensation Case,* 193 Pa. Superior Ct. 349, 165 A. 2d 131 (1960), that a claimant was unavailable for work and ineligible for benefits when she refused to accept a referral because she was awaiting recall by a former employer. An employee who indicated that she would accept employment for only a limited period of three or four weeks until her old position would become available

was not generally attached to the labor market. *Rex Unemployment Compensation Case,* 183 Pa. Superior Ct. 442, 132 A. 2d 363 (1957).

The question of good faith as required of the claimant who claims he is available for work involves conduct which is consistent with a general desire to work. A passive attitude relative to seeking employment may indicate want of good faith and negative any conclusion of willingness to accept suitable work. *Bernotas Unemployment Compensation Case,* 175 Pa. Superior Ct. 437, 106 A. 2d 638 (1954). The claimant in the instant case testified as follows to his efforts to obtain employment. "Q. Did you make any effort to find work during the period of time that you were unemployed? A. I made no applications in the area. No, sir. Q. Did you have any job offers from anybody? A. No, none." This seems clearly to indicate a passive attitude toward seeking employment during the suspension and negatives good faith.

While the Board is the ultimate fact finder, the question before this Court is whether the law was properly applied in determining eligibility. We think not.

Decision reversed and benefits denied.

---

DISSENTING OPINION BY WRIGHT, J.:

It is my view that this case is ruled by the decision of our Supreme Court in *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A. 2d 906. The record reveals that the work-sharing technique under consideration was proposed by the employer, not by the union. The employer's Director of Industrial Relations admitted that claimants desired to continue working. "They asked if they could not return to work. We laid them off and they were told they could not". Moreover, it clearly appears that claimants were available for suitable work. Claimant Lybarger

testified as follows: "Q. If you had been offered full-time work would you have accepted it? A. I certainly would". The factual matrix at the time of separation plainly demonstrates that claimants may not be disqualified either under Section 402(b)(1) or under Section 401(d).

MONTGOMERY and FLOOD, JJ., join in this dissenting opinion.