Roseann Chickey et al., Appellants, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued January 9, 1975, before Judges KRAMER, WILKINSON, JR. and MENCER, sitting as a panel of three.

*Richard Kirschner,* with him *Markowitz & Kirschner,* for appellants.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, February 14, 1975:

This opinion involves the appeal of eleven employes of the Pennsylvania State Oral School for the Deaf (School) located in Scranton from an order of the Unemployment Compensation Board of Review (Board) denying unemployment compensation benefits. Although these employes include two separate categories, viz. houseparent and teacher aide, and although their history of employment varies, it was agreed, and the record supports, that for purposes of this opinion the legal issues involved are identical for each of the eleven employes.

For several years, the employes worked under an oral agreement whereby they received biweekly pay for the school calendar year, including approximately two weeks prior to the opening of school in September for the purpose of preparing the dormitories and classrooms through the end of the school year in the middle of June. For the school year 1971-72 they reported for work in the latter part of August, 1971. They concluded the year's work on June 16, 1972. They were considered provisional employes and had not qualified as perma-

nent civil service employes.[1]  Their pay was determined by a grading of state employe service.  For instance, one of the eleven was a houseparent under the grade of 26-C.  In order to determine the individual's salary, the School divided the annual pay for his grade by 26 in order to determine the biweekly pay and then actually paid said biweekly pay only 22 times.  There is no question that these employes received the same vacation days received by other teaching employes of schools in Pennsylvania, as a result of which they received between 25 and 30 days of paid vacation during the school year, e.g., Christmas, Easter, etc.  The record clearly shows that although these employes' last day of work was June 16, 1972, they were paid through June 23, 1972.  Although the record is not clear concerning the purpose of this extra week's pay, there is a reference by one of the officials of the School that it could be interpreted to be a one-week vacation pay.  We also glean from the record that the hospitalization and life insurance coverages of these employes are carried through the summer months, however during the summer period they paid for such coverage. For pension purposes their rights were based upon ten months rather than one full year.

As we have already noted, these employes were not covered by any formal written employment contract. Over the years, a system or policy developed whereby all of these employes were carried upon the roll of the school during the summer months for the purpose of employment in the following September, unless the employe was notified of his termination at the end of the previous school year.  For a period of fifteen years no employe had ever been refused employment in the fol-

---

[1] The record indicates, however, that at some time subsequent to the school year in question (1971-72) the positions will be subject to civil service examination.

lowing school year. The School expected each of these employes to return for employment in late August or early September of 1972. The houseparent employes were advised by letter in early August 1972 to return to work. The teacher's aides, however, were required to take the initiative to contact the regular teacher with whom they worked to determine the date they were to return. In at least one of the cases a teacher's aide was informed prior to June 16, 1972, when to return and with whom she would be working. The houseparents actually began work on August 21, 1972. All of these employes were expected to work 37½ or 40 hours per week and from the record, all of them expected to return for work in September of 1972. None of them received any pay for the period June 24 through August 15, 1972.

On or about July 1, 1972, the employes filed applications for unemployment compensation benefits under the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, *as amended*, 43 P.S. §751 et seq. In early August of 1972, the Bureau of Employment Security determined the employes to be ineligible. Upon appeal and after hearing, the referee affirmed the Bureau's decision. The employes again appealed and the Board, on October 17, 1973, affirmed the referee's decision, but later vacated its decision and scheduled another hearing which was held January 21, 1974. Following the hearing, the Board on February 8, 1974 reinstated its order of October 17, 1973, in effect affirming the adjudication of the referee and denying benefits. The employes now appeal to this Court.

Our scope of review in this type of case, absent fraud or error of law, is to determine if the findings of the Board are supported by substantial evidence. *See Stalc v. Unemployment Compensation Board of Review*, 13 Pa. Commonwealth Ct. 131, 318 A. 2d 398 (1974).

On appeal to this Court, the employes present two

issues. First, they contend that the order of the Board is not supported by substantial evidence. Secondly, they argue that the Board erred as a matter of law in concluding that they were unavailable for work under Section 401(d) of the Act, 43 P.S. §801(d) (Supp. 1974-1975) because of the understanding that they were to return to work at the beginning of the next school year.

The employes contend that three of the Board's findings of fact, numbered 4, 8 and 10 are not supported by substantial evidence. Findings 8 and 10 read as follows:

"8. There was an implied understanding among employees that they were to return for the following school year unless they were notified otherwise. The claimant had worked under this arrangement with the employer since 1967.

"10. During the period at issue, the claimant was still carried on the rolls of the employer and was not generally available for work." Our review of the record permits us to conclude that there is substantial evidence to support both of these findings. Finding of fact No. 4 reads as follows: "4. The employer paid the claimant her annual salary by dividing the total yearly amount into 26 increments and paid the claimant the total salary over 22 pay periods." As our summary of the facts has indicated, this finding is in error because the total annual salary was not paid over the 22 pay periods. Rather the total annual salary for the classification or grade of state employe was divided by 26, and only 22 such biweekly payments were made. In other words, these employes received approximately 85% of the annual pay for their grade. This error, however, is not controlling or fatal.

The controlling issue in this case is whether or not the Board committed an error of law by determining that the employes were not unemployed and not avail-

able for work. Section 401(d), 43 P.S. §801(d) (Supp. 1974-1975), provides in pertinent part:

"Compensation shall be payable to any employe who is or becomes unemployed, and who—

. . . .

"(d) Is able to work and available for suitable work. . . ." The Board reasoned that because the employes expected to return to their employmeent within about eight weeks time, they were not available for work within the meaning of Section 401(d). The employes argue that the Board was in error because they were unemployed and unpaid for an eight-week period during which they were available for some kind of work. The employes compare this case to a plant shutdown vacation and contend they are entitled to benefits under the provisions of Section 4(u) of the Act, 43 P.S. §753(u) and Section 404(d) of the Act, 43 P.S. §804(d) (Supp. 1974-1975).[2]

---

[2] Section 4(u) of the Act, 43 P.S. §753(u) reads as follows:
"The following words and phrases, as used in this act, shall have the following meanings, unless the context clearly requires otherwise.

. . . .

"(u) 'Unemployed.'

"An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

"Notwithstanding any other provisions of this act, an employe who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation.

"No employe shall be deemed eligible for compensation during a plant shutdown for vacation who received directly or indirectly any funds from the employer as vacation allowance."

This is a close case and will have far-reaching ramifications. The employes rely heavily upon our recent

Section 404(d) of the Act, 43 P.S. §804(d) (Supp. 1974-1975), reads as follows:

"Compensation shall be paid to each eligible employe in accordance with the following provisions of this section except that compensation payable with respect to weeks ending in benefit years which begin prior to the first day of October, one thousand nine hundred seventy-one shall be paid on the basis of the provisions of this section in effect at the beginning of such benefit years.

. . . .

"(d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of October, one thousand nine hundred seventy-one, shall be paid with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of (i) the remuneration, if any, paid or payable to him with respect to such week for services performed which is in excess of his partial benefit credit; (ii) vacation pay, if any, except when paid to an employe who is permanently or indefinitely separated from his employment and (iii) that part of a retirement pension or annuity, if any, received by him under a private pension plan to which a base-year employer of such employe has contributed which is in excess of forty dollars ($40) per week. Retirement pension or annuity payments received by the employe under the Federal OASI program, the Federal Railroad Retirement program or under any private retirement plan to which the employe was the sole contributor, shall not be considered a deductible retirement pension or annuity payment for the purpose of this subsection. The provisions of this subsection shall be applicable whether or not such vacation pay, retirement pension or annuities, or wages are legally required to be paid. If such retirement pension or annuity payments deductible under the provisions of this subsection are received on other than a weekly basis, the amount thereof shall be allocated and pro-rated in accordance with the rules and regulations of the department. Vacation pay, or other remuneration deductible under the provisions of this subsection shall be pro-rated on the basis of the employe's normal full-time weekly wage and as so pro-rated shall be allocated to such period or periods of unemployment as shall be determined by rules and regulations of the department. Such compensation, if not a multiple of one dollar ($1.00), shall be computed to the next higher multiple of one dollar ($1.00)."

opinion in the case of *United States Steel Corporation v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 206, 303 A. 2d 852 (1973); but that case is inapposite for the reason that there it was determined that the employe's layoff was for an indefinite period of time thereby bringing the employe within the exception stated in Section 404(d)(ii) of the Act. In this case, the Board found as a fact that these employes had an understanding that they would return to their jobs either two weeks prior to, or at the beginning of, the next succeeding school year. This finding is supported in the record and we conclude that these employes do not fall within the exception of Section 404 (d)(ii) of the Act. While our reading of Section 4(u) of the Act presents a strong case for the employes, the cases interpreting an employe's availability for suitable work under the provisions of Section 401(d) require us to conclude that these employes were not entitled to unemployment compensation benefits.

A claimant to be eligible for benefits must be "actually and currently attached to the labor force." *Shira v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 457, 310 A. 2d 708 (1973); *Hunt v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 577, 302 A. 2d 866 (1973). In *Pinto Unemployment Compensation Case,* 168 Pa. Superior Ct. 540, 542, 79 A. 2d 802, 803 (1951), it was stated: "A claimant is required at all times to be ready, able, and willing to accept suitable employment, temporary or full time. . . . But one may render himself unavailable for work by conditions and limitations as to employment. Willingness to be employed conditionally does not necessarily meet the test of availability. The determination of availability is largely a question of fact for the Board." *See also Knox v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 200, 315 A. 2d 915 (1974).

We believe our recent decision in *Dingel v. Unemployment Compensation Board of Review*, 14 Pa. Commonwealth Ct. 484, 322 A. 2d 731 (1974), controls the result of this case. In *Dingel* the claimant requested and received a 90-day leave of absence for medical reasons. She applied for unemployment compensation benefits which were denied. This Court affirmed the Board's denial and stated: "A review of prior cases has uncovered no precedent exactly interpreting the significance of a leave of absence without pay for purposes of determining 'availability' under Section 401 (d). A leave of absence has been defined as 'a temporary absence from duty with intention to return during which time remuneration is suspended.' . . . The leave of absence . . . [resembles] a temporary layoff, which is a situation where the employer and employe maintain a nominal relationship but the employe is neither actively working nor receiving compensation from the employer. It generally contemplates that the employe will rejoin the employer's active work force at a specified date in the future, and it has been held to afford no basis for the claim that an individual is unemployed within the meaning of the Unemployment Compensation Law." 14 Pa. Commonwealth Ct. at 488, 322 A. 2d at 733. We there concluded: "Where there is evidence from which it could be reasonably inferred that the claimant expected and desired to return to work with her former employer, a finding that the claimant is not 'available' within the meaning of the Unemployment Compensation Law is adequately supported." 14 Pa. Commonwealth Ct. at 490, 322 A. 2d at 735.

*Lybarger Unemployment Compensation Case*, 203 Pa. Superior Ct. 336, 201 A. 2d 310 (1964), aff'd., 418 Pa. 471, 211 A. 2d 463 (1965), involved an agreement between the claimant's union and his employer providing that in January the employer would adjust personnel, retaining by seniority the number of employes required

to maintain normal production, but that said employes would only work until their gross earnings for the year amounted to $5,000, at which time they would be replaced by less senior personnel. In *Lybarger, supra,* the Superior Court held that the claimant was not eligible for benefits because (1) he voluntarily terminated his employment and (2) he was not available for work. The Supreme Court affirmed on the voluntary termination issue and, therefore, did not believe it necessary to consider the availability for work issue. In *Lybarger,* however, both the Superior and Supreme Courts noted that the intent of the Unemployment Compensation Law was not to provide a subsidy for an employer's labor force.

In effect what the employes in this case are requesting is that the government should provide them with a full year's income because theey have agreed to work and be paid for only 44 weeks of each year. If the employes in this case had made an application for unemployment compensation whereby they had indicated that they were available for suitable work without any limitation, then there is little doubt they would have been entitled to benefits commencing June 24, 1972. This record indicates, however, that each and every one of these employes recognized that they intended to return to their employment at the school in August or September of 1972. For example, as a part of the record in this case, one of these eleven employes stated at her interview in the Bureau of Employment Security's local office: "I have looked for work other years during the summer months but no one was willing to have me because they knew I would return to my regular job in September when school opened." This very frank admission is typical of these employes' position that they were not actually and permanently attached then to the labor force. In short, they were not available for suitable work. *See Trella v. Unemployment Compensation*

*Board of Review,* 10 Pa. Commonwealth Ct. 305, 309 A. 2d 742 (1973). While it is very tempting to utilize Sections 4(u) and 404(d) of the Act to aid these employes involved in such worthy employment for what appears to be low wages, we cannot ignore the full intent of the Legislature to exclude them when the record conclusively shows that they are in fact not available for suitable work without limitations. To hold otherwise would be to ignore the law and permit the use of the unemployment compensation funds to subsidize the School's employment program. For the above reasons, therefore, we issue the following

#### ORDER

AND NOW, this 14th day of February, 1975, the order of the Unemployment Compensation Board of Review on the claims of Roseann Chickey, Michael J. Kabillus, Janet E. Lamb, Margaret Walsh, Ann M. Micciche, Mary Vitello, Rachel D. Davis, Ann F. Rable, Raphela M. Rossi, Edna S. Carroll and Jean D. Perry is hereby affirmed.