George Hyduchak, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

David F. Karr, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Albert Visocky, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Ernest J. Stolten, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Philip Scavo, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 7, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT and DiSALLE.

*John E. V. Pieski,* for petitioners.

*Michael Klein,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, June 2, 1978:

Five cases involving the eligibility of public school teachers for unemployment compensation during the summer months when they are not teaching have been consolidated for purposes of argument and decision by this Court. Each of the five claimants has appealed from a decision of the Unemployment Compensation Board of Review (Board) denying him benefits.

Although the procedural history differs somewhat in each case, these five claimants can be divided into two groups based upon the legal issues involved: Group I, consisting of claimants George Hyduchak, David Karr, and Albert Visocky, who were denied

benefits principally because they had been found by the Board to have had at least an implied contract to return to their teaching positions in the fall and were, therefore, ineligible for benefits under Section 203(b) of the Emergency Jobs and Unemployment Assistance Act of 1974, 26 U.S.C.A. §3304; and Group II which included claimants Ernest Stolten and Philip Scavo who were denied benefits under Section 4(u) of the Unemployment Compensation Law[1] (Act), 43 P.S. §753(u), because the Board concluded that, by electing to receive their salary over a twelve-month period, they did not meet the definition of "unemployed."

Our scope of review, of course, is limited in unemployment compensation cases to a determination of whether or not an error of law was committed, and, absent fraud, to a determination of whether or not findings of fact are supported by the evidence. *Westfall v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 619, 379 A.2d 1389 (1977).

The three claimants in Group I had worked for either two or three years in the Lackawanna County Vocational Technical School at the time they applied for unemployment benefits in June, 1976. None of the three had yet been tenured and none worked under a written contract. None were officially notified until late in the summer that they were to report to work for the next school term, but each admitted either on his application form or at the referee's hearing that he had some expectation that he would be returning to work.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §751 et seq.

[2] Claimant Hyduchak answered the question, "Do you expect to return to your school job at the end of summer?" by checking the "yes" block and writing in the words "if work is available." Claimant Karr answered the referee's question, "Do you agree that there is at least an implied agreement that you will be returning to your

Each claimant in Group I was initially denied benefits by the Bureau of Employment Security (Bureau) based on this Court's decision in *Chickey v. Unemployment Compensation Board of Review,* 16 Pa. Commonwealth Ct. 485, 332 A.2d 853 (1975), in which school employees were held to be ineligible for benefits during the summer months because they were not available for suitable work without limitation and were not actually and permanently attached to the labor force. *See also, Ritter v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 68, 382 A.2d 1255 (1978); *Calvano v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 79, 368 A.2d 1367 (1977). Section 102(b)(1)(B) of the Emergency Unemployment Compensation Act of 1974, 26 U.S.C.A. §3304, however, permits payments to individuals who "have no rights to compensation" under the state unemployment compensation law, and, on appeal to the Board, the issue there became one of eligibility under Section 203(b) of the Emergency Jobs and Unemployment Assistance Act of 1974 which provides special qualifications pertinent to teachers:

> An individual who performs services in an instructional, research, or principal administrative capacity for an educational institution or agency shall not be eligible to receive a payment of assistance or a waiting period credit with respect to any week commencing during the period between two successive academic years . . . if—

teaching position in September?" by saying, "Yes, but it is just implied." Claimant Visocky, when asked by the referee if he had any reason to believe that he would not be returning to his teaching position, testified: "I don't think so. I think I will be going back. I believe I will be rehired."

(1) such individual performed services in any such capacity for any educational institution or agency in the first of such academic years or terms; and

(2) such individual has a contract to perform services in any such capacity for any educational institution or agency for the later of such academic years or terms.[3]

The three findings crucial to the Board's determinations in these cases are:

The claimant's [Hyduchak's] employment with Lackawanna County Area Vo-Tech School has not been terminated.

[T]here is an implied agreement that he [Karr] will return to his teaching position in September, 1976.

The claimant [Visocky] was under contract with his employer until June 30, 1976 and he expects to return to his school position in September, 1976.

While we would note that the findings could have been more precise with respect to the presence or absence of a "contract to perform services," we believe that each record here contains sufficient evidence to support the findings made by the referee and adopted by the Board. Moreover, we do not believe that the Board erred as a matter of law in denying benefits based on the claimants' expectations of returning to work even in the absence of a written contract. It is clear that under past practices the school issued no written con-

---

[3] Amendments effective with respect to services performed after December 31, 1977, have changed this language to "if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms."

tracts to individual teachers but it is equally clear that the claimants themselves believed that they had an implied agreement to return to perform their teaching duties in the fall. This is sufficient, we believe, to place them within the disqualifying language and we will, therefore, affirm the denial of benefits to them.

The two claimants in Group II[4] were denied benefits solely on the basis that they did not meet the definition of "unemployed" in Section 4(u) of the Act, 43 P.S. §753(u), which states in pertinent part:

An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him. . . .

In addition to the customary factual finding describing the claimant's job and salary, the only other finding of fact made by the referee and adopted by the Board was identical in each case:

Claimant receives his salary over a 12-month period and was paid during the summer months.

The claimants here do not challenge the accuracy of this finding but argue that it should not alter their status as "unemployed." A representative of the school district testified that all teachers are given the option of receiving a lump sum payment equaling the biweekly pay normally received over the summer months or of continuing to receive bi-weekly checks throughout the summer. The claimants elected this latter option, and other benefits such as health and life insurance also continued during the summer regardless of the teacher's election with respect to wages. It

---

[4] Disqualification under Section 4(u) of the Act was specifically given as an additional reason for denying benefits to Claimant Visocky.

was on the basis that these claimants received salary each month that they were found "not unemployed."

The standard for determining eligibility as an "unemployed" individual was discussed by our Supreme Court in *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A.2d 906 (1959), which concerned the receipt of pension benefits. There, as in the cases presently before us, the claimant clearly performed no services during the claim week and the issue there, as here, was whether or not the claimant qualified under subsection (ii). The Supreme Court defined "remuneration" as "payment for services performed." *Gianfelice, supra,* 396 Pa. at 555, 153 A.2d at 911. We believe that the wages received by the claimants here must certainly be considered "remuneration"[5] and that we must accept the Board's findings that this "remuneration" was paid during the claim weeks in question. We must conclude, therefore, that these claimants do not satisfy the condition of subsection (ii) and that they are not "unemployed" for purposes of the Act.

For the reasons set forth above, the Board orders denying benefits to all five claimants will be affirmed.

ORDER

AND Now, this 2nd day of June, 1978, the orders of the Unemployment Compensation Board of Review are hereby affirmed.

---

[5] A majority of this Court, with one dissenting vote, has held that vacation pay is "remuneration." *See Unemployment Compensation Board of Review v. Buss,* 26 Pa. Commonwealth Ct. 160, 362 A.2d 1113 (1976).