v.

**A. C. B. and Chrysler Corporation, Respondents.**

Family Court of Delaware, New Castle.

Submitted Sept. 19, 1978.

Decided Nov. 22, 1978.

Ruth M. Ferrell, Wilmington, for petitioner.

William E. Manning, of Richards, Layton & Finger, Wilmington, for respondents.

KELLEHER, Judge:

The matter is before the Court on respondent Chrysler Corporation's motion to dis-

miss amended petition against Chrysler Corporation for failure to abide by a wage attachment order made pursuant to 13 *Del.C.* § 516.

By order of this Court dated June 13, 1978, A.C.B. was directed to pay to petitioner for the support of the parties' two minor children and interim relief the sum of $90.00 per week. At the same time, a wage attachment issued to the Chrysler Corporation. However, on or about the same date, Mr. B. began to receive sickness and accident benefits for a seven-week period. Said benefits were paid directly to Mr. B. by the Chrysler Corporation's insurance carrier, Aetna Insurance Company. Additionally, the Chrysler plant was shut down for a two-week period, July 28–August 14, 1978, and during that time Mr. B. was paid unemployment compensation by the State and Supplemental Unemployment Compensation Benefits (hereinafter "SUB–Payments") by Chrysler. Mr. B. paid no monies to petitioner during this period and Chrysler withheld no monies from either the insurance benefits or the SUB–Payments.

Petitioner filed a rule to show cause petition against Chrysler for violation of wage attachment as to the sickness and accident payments made to Mr. B. Petitioner then amended the petition to include Chrysler's failure to withhold monies from the SUB–Payments.

This Court dismissed the complaint against Chrysler as to the insurance benefits, as those were paid directly by the insurance carrier. At issue in the case at bar is whether Chrysler was in violation of an order of this Court in that the corporation failed to deduct ordered support payments from the SUB–Payments made to its employee, A.C.B.

The Supplemental Unemployment Compensation Benefits Plan (hereinafter "Plan"), created pursuant to a national collective bargaining agreement between Chrysler Corporation and the United Auto Workers, sets up a trust fund to which Chrysler is obligated to contribute and out of which SUB–Payments are made to eligible employees. Contributions to this fund

are the sole obligation of Chrysler and such funding is not chargeable in any manner to an employee.

Article VII, Section 7 of the Plan provides at 205:

"No Employee shall have any right, title, or interest in or to any of the assets of any Fund, or in any Corporation contribution thereto."

Likewise, Section 18B of the trust agreement of January 1, 1976 between Chrysler and Manufacturers Hanover Trust Company and the National Bank of Detroit (Plan trustees) stipulates that no employee has any vested interest in either the assets of such fund or the corporation's contributions thereto. Legal title to the assets of the respective funds out of which SUB–Payments are made are at all times in the Plan trustees.

The funds established by the Plan are in the nature of an insurance trust to which an employee has no vested rights unless and until such employee qualifies for benefits under the terms of the Plan.

█ Thus, the Court must first determine whether SUB–Payments made to an employee are "wages" for purposes of an order of attachment made pursuant to 13 *Del.C.* § 516.

There is no statutory definition of "wages" within 13 *Del.C.* § 516. The most applicable definition of that term in the *Delaware Code* is found in 10 *Del.C.* § 4913(c):

"Wages shall include salaries, commissions and every other form of remuneration paid to an employee by an employer for labor or services, but shall not include payment made for services rendered by a person who is master of his own time and effort."

Although the particular question of the inclusion of SUB–Payments within the term "wages" for purposes of a support wage attachment appears to be one of first impression in Delaware, counsel for petitioner has presented persuasive argument in favor of their inclusion.

The Supreme Court of Ohio held that an employee who was laid off for lack of work but did not lose his status as an available employee and received SUB–Payments under an agreement between the employer and union, had received "remuneration" for services under the statutory definition and was properly required to repay the corresponding amount of state unemployment benefits paid to him. *United Steelworkers of America, AFL–CIO v. Doyle*, 168 Ohio St. 324, 154 N.E.2d 623 (1958).

Of particular relevance is the holding of that court at 625:

"It is urged that since in the instant case the supplemental unemployment benefit payment was made by a trustee and no service was performed for the trustee, such payment could not have been remuneration.

"However, this device in no way alters the fact that the payments are made for services rendered to the employer, and it is the employer who, in the first instance, considers and allows or disallows the claims. The trustee simply pays the claim as instructed."

In *W. W. Cross & Co. v. N. L. R. B.*, 174 F.2d 875 (1st Cir. 1949), the U.S. Court of Appeals held at 878:

"[W]e think it can safely be said that the word 'wages' in § 9(a) of the Act [National Labor Relations Act, as amended by the Labor Management Relations Act] embraces within its meaning direct and immediate economic benefits flowing from the employment relationship. . . . So construed the word covers a group insurance program for the reason that such a program provides a financial cushion in the event of illness or injury arising outside the scope of employment at less cost than such a cushion could be obtained through contracts of insurance negotiated individually."

See also *Foremost Dairies, Inc. v. Industrial Accident Commission*, 237 Cal.App.2d 560, 47 Cal.Rptr. 173 (1965); *Moorehead v. Industrial Commission*, 17 Ariz.App. 96, 495 P.2d 866 (1972); *Hyduchak v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review*, 35 Pa. Cmwlth. 575, 387 A.2d 669 (1978).

This exact language in *W. W. Cross, supra*, was cited with approval by the Delaware Court of Chancery in *State v. American Federation of State, County and Municipal Employees, AFL–CIO Local 1726, Division of Adult Correction*, Del.Ch., 298 A.2d 362, 365 (1972).

In holding that the subject of health insurance programs for both employees and the members of their families is within the permissible scope of collective bargaining, as defined at 19 *Del.C.* § 1301(c) and (e), the court found the reasoning in *W. W. Cross, supra*, (and other cited opinions) persuasive but declined to decide "whether [such programs are] appropriately included under 'wages' and 'salaries' or 'other terms and conditions of employment.' " *State v. American Fed. of State, C. & M. Emp., Loc. 1726, supra*, at 366.

The Court thus holds that SUB–Payments made by an employer to an employee during a period of layoff are remuneration paid as a result of the employment relationship. As such, these benefits can be reached by a wage attachment order pursuant to 13 *Del.C.* § 516.

The Non-alienation of Benefits and Separation Payments, Article VI, Section 5 of the Plan, is ineffective to avoid the attachment of SUB–Payment under a Family Court order of support for minor children and/or spouse, pursuant to 13 *Del.C.* § 516 (see also Trust Agreement, Section 19).

The language of Article VI, Section 5 clearly indicates that the motive for the clause is to ensure that SUB–Payments are used to fulfill the support obligations of the employee. The clause inhibits the ability of a creditor to reach SUB–Payments and thus deprive an employee's family of financial support needed during a time of decreased earnings.

Furthermore, case law has consistently distinguished the statutory obligation to provide support from the usual creditor relationship. Indeed, two recent New York cases have held that the prohibition against assignment or alienation of pension plan benefits in the Federal Employee Retirement Income Security Act (ERISA) cannot proscribe payroll deductions against the pension for the payment of support. *In re Wanamaker*, Fam.Ct. Rockland County, 401 N.Y.S.2d 702 (1978); *Cogollos v. Cogollos*, 93 Misc.2d 406, 402 N.Y.S.2d 929 (1978). In *Wanamaker, supra* the court specifically noted at 703: "The obligation of support of alimony to be paid from fixed trusts or pensions is a long and established principle of statute law and of case law. . . ."

As is the case with pensions, it would be an absurd, unfair and unconscionable result to say that the very individuals to whom support is intended to be guaranteed by a non-alienation provision cannot enforce by means of an order under 13 *Del.C.* § 516 the employee's liability imposed by law to provide such support.

■ Despite the inclusion of these payments as attachable wages, Chrysler argues that the corporation had no authority to respond to the wage attachment order with respect to the SUB–Payments. There appears to be no persuasive authority on this issue.

Chrysler argues that it lacks custody and control over the payments due its employees under the Plan, its only obligation being to contribute to the fund out of which SUB–Payments are made. In support of its contention that Chrysler lacks the legal right to divert SUB–Payments to an entity other than the employee, respondent cites the terms of the Plan (Article VI, Section 1) and the Trust Agreement (Section 18B) which indicate that Chrysler has no authority over the funds once its contributions have been made.

However, while the Plan does indeed set up a separate fund with legal title to such in the designated trustees, Chrysler is directly involved in the disbursement of SUB–Payments beyond merely making contributions and "gathering data concerning the employee/applicant in processing any disbursement on behalf of the Trustee." (Respondent's motion to dismiss amended petition, p. 2.)

Indeed, according to the affidavit of I. C. Richards, Supervisor, Unemployment Benefits Plans for Chrysler Corporation, an employee on qualifying layoff makes application under Article V, Section 1 of the Plan.

The application is processed by the corporation and a determination of the employee's entitlement to a benefit is made. (Article 6, Section 1[a][3].)

Furthermore, although the language of the Plan provides that it is the function of the Board of Administration of the Plan to "exercise ultimate responsibility for determining whether an employee is eligible for a Benefit or Separation Payment under the terms of the Plan, and, if so, the amount of the Benefit or Separation Payment" (Article VI, Section 2[b][1]), that same section goes on to provide: "The Board shall be presumed conclusively to have approved any initial determination by the Corporation unless the determination is appealed. . . ."

Once an employee's entitlement to a benefit is established, Chrysler's payroll department issues a draft to the employee. The draft is on a fund maintained by Manufacturer's Hanover Bank in New York. Thus, unless there is an appeal from the initial decision, Chrysler appears to be authorized to handle the complete disbursement process.

Nevertheless, an analysis of Section 7 of the Trust Agreement is necessary before any conclusions may be drawn. Section 7 provides at 12:

> "Each Plan Trustee shall deduct from the amount of any Benefit or Separation Payment under the Plan any amount required to be withheld by it, and upon written direction from the Committee shall deduct from the amount of any such Benefit or Separation Payment any amount required to be withheld by the Corporation, by reason of any law or regulations, for the payment of taxes or otherwise, to any Federal, State, or municipal government, and each Plan Trustee shall arrange for the reporting and transmittal to the proper authorities of amounts so withheld. . . ."

The language of this section necessitates two conclusions. First, where a wage attachment for support is being sought in the first instance directly against SUB–Payments, such an order should be directed against the Plan trustee(s). Such trustees do have the authority to deduct the specified amount from the benefits owing the employee and arrange for their transmittal to the Bureau of Child Support Enforcement.

Second, where a wage attachment order under 13 *Del.C.* § 516 is already in existence, if the employee involved subsequently becomes eligible for SUB–Payments, it is incumbent upon Chrysler to notify the Local Committee of the corporation's underlying legal obligation to pay such benefits directly to the Bureau of Child Support Enforcement. The Committee shall then provide the necessary written directions to the Plan trustee(s) in accordance with the requirements of Section 7.

Placing such a duty on Chrysler is consistent not only with the terms of the Trust Agreement, Section 7 and the Plan, Article VII Section 5(k), but also with the amount of practical control Chrysler actually has over the disbursement of SUB–Payments. Additionally, such a notification procedure does not appear to be unduly burdensome to the corporation. Furthermore, it is consistent with Delaware's view of a parent's duty of support as a paramount obligation that every effort be made to ensure that sufficient financial support be provided to those to whom the employee owes such a duty.

There is no difficulty with the attached amount being a greater portion of the SUB–Payments than it was of the wages, for an order under 13 *Del.C.* § 516 is exempt from the fifteen percent limitation.

■ The guidelines set forth in this opinion shall apply in regard to any future wage attachment orders issued pursuant to 13 *Del.C.* § 516. However, in view of Chrysler's lack of intent to violate an order of the Family Court and the corporation's reasonable belief that SUB–Payments were not the proper subject of the June 13, 1978 wage attachment order, Chrysler Corporation's motion to dismiss the amended petition shall be granted.