United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Daniel L. Little et al., Intervenors.

United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Charles G. Morosko et al., Intervenors.

United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. Bonnie L. Johnson et al., Intervenors.

United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 5, 1980, before Judges Mencer, Craig and MacPhail, sitting as a panel of three.

R. M. *Guttshall, III*, for petitioner.

*John T. Kupchinsky*, Assistant Attorney General, with him *Richard Wagner*, Chief Counsel, and *Edward G. Biester, Jr.*, Attorney General, for respondent.

*Frank J. Lucchino, Lucchino, Gaitens, Hough, McGinley & Solomon*, for intervenors.

Opinion by Judge Craig, July 11, 1980:

These unemployment compensation appeals by United States Steel Corporation (employer) seek review of orders of the Unemployment Compensation Board of Review (board) which allowed unemployment compensation benefits to a group of employees,[1] by reversing a referee's decisions which had denied

---

[1] The cases here are lead cases agreed to govern a sizeable number of employees. Those employees whose benefits continue to be affected by these appeals have been divided into two categories: Employees on layoff and those who were soon to be laid off. Neither the briefs nor arguments have given us any basis for distinction between those two groups.

compensation on the ground of nonfulfillment of the requirement of Section 401(d) of the Unemployment Compensation Law[2] which conditions benefits upon the unemployed person being ''available for suitable work.'' We affirm the orders of the board.

Because there is no factual dispute at all, we can suitably state the facts by drawing upon the statements in the parties' briefs.

Each claimant was employed at the employer's Irvin Works and was represented by the United Steelworkers of America (union), under a basic labor agreement and a local seniority agreement. On the basis of seniority (relative length of service) the latter agreement, as is typical, accorded employees with greater seniority the priority status of being later to be laid off and earlier to be recalled, but that seniority agreement was modified by a later memorandum of understanding, which provided that employees in skilled jobs (''above-the-pool'' jobs) would come under, as the referee found it, ''a system of reverse seniority'' with respect to being assigned to labor pool (''group pool'') assignments when no work was available to an employee in the skilled job category, but the reverse seniority concept applied only to employees who executed a ''Waiver of Group Assignment,'' which waiver could be also revoked in writing.

Thus, as the employer's brief puts it, after adoption of the memorandum of understanding, instead of according priority of labor pool assignment to the most senior employees first, the employees who had not executed the waiver were assigned (recalled) first, with priority being given to the most senior among them; then, if labor pool positions were still available when the non-waiver employees had all been assigned, the employees who executed waivers were

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §801(d).

then assigned in reverse order of seniority, the most junior employee first.

Thus, under the seniority agreement as modified by the memorandum of understanding, the order of recall for assignment of laid-off skilled employees to labor pool jobs was as shown by the following diagram (based on one in claimant's brief):

ORDER OF RECALL TO LABOR POOL JOBS

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 etc.

| Senior | Junior | Junior | Senior |
|---|---|---|---|
| Employees Not Under Labor Pool Assignment Waiver | | Employees Under Labor Pool Assignment Waiver | |

The issues here arose when a reduction in force at the employer's Irvin Works resulted in lay-offs and expected lay-offs of a number of skilled employees. As the employer notes in its own brief, it deviated from the past procedure as set forth in the memorandum of understanding, and began to notify the most senior employees who were still working (without reference to waiver status) of the existence of labor pool openings, and then notified laid-off employees of the existence of labor pool openings, also following a pure seniority basis without reference to waiver (reverse seniority) status.

Importantly, the record is clear that the employer did not *offer* any labor pool work to any of the claimants (all of whom had executed waivers of group assignment). Claimants stated to the employer that they would accept a labor pool job if offered, but the employer declined to offer such work to any claimant unless he would first revoke his waiver, which none of the claimants agreed to do.[3]

---

[3] As we gathered at argument, some older workers are understandably willing to forego their regular seniority with respect to labor pool assignments because those jobs are physically more vigorous than their regular skilled jobs.

The employer states that it declined to make actual offers of work for fear of facing grievances or National Labor Relations Board charges based upon the agreements described above.

Therefore, with respect to review of the board's conclusion of eligibility for benefits on the basis that these laid-off claimants were "available for work" we may state the issue as:

Can a skilled employee, involuntarily laid off from his regular skilled job and willing to accept a labor pool job if offered, be deemed to be not available for work on the basis of the existence of some labor pool job openings, if the employer does not offer him a labor pool job because both the employer and the employee are adhering to a union agreement and an election executed thereunder by the particular employee, governing the priority as to the order of such a recall to work?

Claimants here cite *Dunkle v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 495, 327 A.2d 409 (1974) for the correct proposition that, before a claimant can be considered unavailable for suitable employment under Section 401(d), there must be a meaningful offer capable of acceptance. Hence claimants argue that these cases must be decided in favor of the claimants solely because the employer here has admittedly not offered to the claimants any of the jobs upon which the employer relies for its position.

However, in this case of first impression, the proposition is not quite that simple. The employer claims that adherence to the union agreement prevents it from offering the job unless the employee revokes his waiver. The thrust of the employer's position seems to be that the availability of that revocation privilege in the hands of the employee, figuratively speaking, places the ball in the employee's court.

However, may the employer validly object to unemployment benefits while declining to offer the allegedly available job solely because the employee does not give up a reverse seniority status to which he is contractually entitled?

At the outset, we must note that this seeming impasse[4] has arisen because the employer chose to depart from the order of recall established by the contractual elements.

Like the board, our conclusion is that each claimant here is no more unavailable for work than he would be if, under a regular seniority recall agreement, junior status had put him too far back in line to be recalled to a job opening despite his willingness.

The reverse seniority aspects of the agreement here do not limit availability for work any more than a regular seniority agreement can be said to limit the availability of junior employees for work when there are not enough job openings to permit the recall of all employees.

On this record, there is and can be no dispute that if enough labor pool jobs had been available to permit the recall of *all* laid-off skilled employees, the employer, by following the usual procedure, would have gotten down to the claimants in question and, without any violation of the agreements or past practice, been able to make the specific job offers to the specific claimants, who, it is acknowledged, declared themselves willing to accept such offers. We must agree with claimants' position that the employer has failed to show that there were enough labor pool job openings for these claimants; the absence of offers to these claimants tends to confirm that point.

Eligibility for unemployment compensation is governed by ''the factual matrix at the time of separa-

---

[4] With employer and employee each figuratively saying, "After you. . . ."

tion," not by collective bargaining agreement terms. *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 551, 153 A.2d 906, 909 (1959). Here, the factual matrix at the time of separation from employment embodied the sequential order of recall described in the diagram we have set forth above, and under that factual matrix these claimants were never reached in their sequential order to be recalled. We see no basis for deciding that the employer's choice as to order of recall should compel a specific employee to give up the reverse seniority status which the agreement has conferred on him, any more than a senior employee under regular seniority agreement should be compelled to waive his senior status if an employer would try to make that a precondition to a recall offer.

*Lybarger Unemployment Compensation Case,* 203 Pa. Superior Ct. 336, 201 A.2d 310 (1964) is distinguishable. There unemployment compensation benefits were held properly denied where the union agreement required that an employee be laid off after earning an annual wage of $5,000, to be replaced by a junior employee until the following January 1, in order to share the work among all employees in the unit. However, the crucial impact of that labor agreement was that it was part of "the factual matrix at the time of separation" in that the agreement itself produced the lay-off, thus making the claimant voluntarily unemployed. In this case there is no question as to the involuntary nature of the actual layoffs for which compensation is sought. The Superior Court held the *Lybarger* claimants to be not available for work during the lay-off period precisely because the recall date was fixed as the following January 1st, a circumstance not involved here.

We therefore decide that, in view of the absence of any offer of a recall job (and indeed, the absence of any proof that enough job openings were available so that they *could* have been offered to all claimants),

the claimants' declared availability for work was not legally negated by the contractual reverse seniority status. Hence we affirm the board.

### ORDER

Now, this 11th day of July, 1980, the orders of the Unemployment Compensation Board of Review at decision Nos. B-168399 through B-168423 inclusive, are hereby affirmed.