540 A.2d 313

Pearlie M. Parker, Richard W. Bittinger, Wayne Stine and Leonard Spielman, on behalf of themselves and all others similarly situated, Petitioners v. Commonwealth of Pennsylvania, Department of Labor and Industry, and Harris L. Wofford, Jr., Secretary of Labor and Industry, and Knouse Foods Cooperative, Inc., Motts U.S.A., W. E. Bittinger Co., Inc., John F. Cope Co., Inc., Furman Foods, Inc., Benjamin Lipitz Co., Kresge Farm Foods, Inc., and Welch Foods, Inc., Respondents.

94

Argued June 8, 1987, before Judges MacPhail and Barry, and Senior Judge Barbieri, sitting as a panel of three.

*Donald Marritz,* with him, *Carolyn Carter* and *David Woodward,* for petitioners.

*Gregory R. Neuhauser,* Senior Deputy Attorney General, with him, *Andrew S. Gordon,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent, Commonwealth of Pennsylvania, Department of Labor and Industry.

*Alan R. Boynton, Jr.,* with him, *John S. Oyler* and *H. Lee Roussel, McNees, Wallace & Nurick,* for respondents, Knouse Foods Cooperative, Inc., Bittinger Co., Inc., John F. Cope Co., Inc., Furman Foods, Inc., Benjamin Lipitz Co., Kresge Farm Foods, Inc., and Welch Foods, Inc.

*David F. Abernethy,* with him, *Kathryn H. Levering, Drinker, Biddle & Reath,* for respondents, Cadbury Schweppes, Inc. and its Motts, U.S.A. division.

OPINION BY JUDGE BARRY, March 31, 1988:

This is a class action within our original jurisdiction seeking a declaratory judgment on the constitutionality of Section 402.5 of the Unemployment Compensation Law,[1] as well as an injunction against the further appli-

---

[1] Act of December 5, 1936, P.L. 2897, *as amended,* added by the Act of July 1, 1985, P.L. 96, §6. 43 P.S. §802.5.

cation of said statute. The petitioners are Pearlie M. Parker, Wayne Stine and Leonard Spielman, who bring this action on behalf of themselves and all workers who have been determined to be or may, in the future, be determined to be seasonal workers in the fruit and vegetable food processing industry.[2] The respondents are the Department of Labor and Industry (Department) and the Secretary of the Department of Labor and Industry, (government respondents) and those companies which are engaged in the fruit and/or vegetable food processing industry in the Commonwealth (private respondents). We are here concerned with preliminary objections filed by both the government and private respondents.

## BACKGROUND

Section 402.5 provides in pertinent part:
Eligibility of Seasonal Workers in fruit and vegetable food processing
(a) Notwithstanding any other provision of this act with respect to service performed in a 'seasonal operation' or 'seasonal industry', as defined in this section, benefits shall not be paid to a seasonal worker, based on such services for any week of unemployment occurring outside of the normal seasonal period of operation, provided there is a contract or reasonable assurance that such seasonal worker will perform services in that seasonal industry in his next normal seasonal period. However, if upon presenting himself for work in his next normal seasonal period, the individual is not offered an opportunity to perform such services, his claims for unemployment compensation shall be accepted retroactively to

---

[2] Also named as a petitioner is Richard W. Bittinger, who died subsequent to the filing of this action.

the time the individual's benefits (based on seasonal and nonseasonal wages) would have commenced but for this subsection.

(b) Upon written application filed with the department by an employer engaged in a 'seasonal industry' as defined in this section, the secretary shall determine, and may thereafter redetermine, in accordance with the rules and regulations of the department, the normal seasonal period during which workers are ordinarily employed for the purpose of carrying on seasonal operations in the seasonal industry in which such employer is engaged. An application for such determination shall be made on forms prescribed by the department. Such application must be made at least twenty (20) days prior to the estimated beginning date of the normal seasonal period for which the determination is requested. Simultaneously with the filing of the application, the employer shall conspicuously display on the employer's premises, in a sufficient number of places, a copy of the application.

(c) An employer determined, in accordance with the provisions of this section, to be a 'seasonal operation' or 'seasonal industry,' as defined in this section, shall be required to conspicuously display notices of the seasonal determination on its premises in a sufficient number of places as will fairly advise its employes of the estimated beginning and estimated ending dates of its normal seasonal period. Such notices shall be provided by the department.

. . . .

(e) Any determination issued under the provisions of this section shall be subject to review in

the same manner and to the same extent as all other determinations issued under this act.

. . . .

(h) For the purposes of this section, the following definitions shall apply:
(1) 'Fruit or vegetable food processing operation' means those services performed in connection with commercial canning or commercial . freezing of fruits and vegetables.
(2) 'Normal seasonal period' means the normal seasonal period, as determined in accordance with subsection (b) of this section, during which workers are ordinarily employed for the purpose of carrying on seasonal operations in each seasonal industry, as defined in this section.
(3) 'Seasonal industry' means an industry, establishment or process within an industry which, because of climatic conditions making it impractical or impossible to do otherwise, customarily carries on fruit or vegetable food processing operations, or both, only during a regularly recurring period of one hundred eighty (180) days of work or less in a calendar year.
(4) 'Seasonal operation' means an operation in which it is customary for an employer engaged in a seasonal industry as defined in paragraphs (1) and (3) of subsection (h) of this section, to operate all or a portion of its business during a regularly recurring period of one hundred eighty (180) days of work or less for a normal seasonal period during a calendar year. An employer may be determined to be engaged in a seasonal industry as defined in this section, with respect to a portion of its business, only if that portion, under the usual and customary practice in the industry, is identifiable as a functionally distinct operation.

(5) 'Seasonal worker' means a worker who performs commercial canning or commercial freezing services for a fruit or vegetable food processing operation for less than one hundred eighty (180) days of work.

Prior to the enactment of this statute, workers whose wages were attributable solely to employment in seasonal fruit and vegetable food processing operations were able to collect unemployment compensation benefits during the off-season period (*i.e.*, those weeks occurring outside the normal seasonal period of operation), even though they may have had contracts or reasonable assurances that they would be performing services in that industry in the season following thereafter.

The petitioners' claims in this action can be summarized as follows:

(a) Section 402.5 is a 'special' or 'local' law prohibited by Article III, Section 32 of the state constitution.

(b) Section 402.5 was enacted in violation of Article III, Section 1 of the state constitution, because its subject and purpose was not clearly expressed in the title of the bill which has its genesis in House Bill 1042, 1985 Session.

(c) Section 402.5 was enacted in violation of Article III, Section 3 of the State constitution, since the original version of House Bill 1042 was so altered and amended as to entirely change its original purpose.

(d) Section 402.5 was enacted in violation of Article III, Sections 2 and 4 of the state constitution, because the version of House Bill 1042 which passed the General Assembly, (Printers No. 1984), was never referred to a House Committee and was not considered by the House on three separate days.

(e)   By reason of the procedures provided for an employer's obtaining a seasonal determination and review of such a determination, Section 402.5, on its face and as applied, violates petitioners' rights under the state Administrative Agency Law, the federal Social Security Act, Article V, Section 9 of the state constitution and the due process provisions of the state and federal constitutions.

(f)   Section 402.5 deprives affected workers of equal protection of the laws, in violation of both the state and federal constitutions.

(g)   Section 402.5 deprives affected workers of substantive due process, in violation of both the state and federal constitutions.

(h)   Section 402.5 improperly delegates legislative power to private parties, in violation of Article II, Section 1 of the state constitution.

In additon to all of these claims, the petitioners contend that the Department has not been, and is not now, administering Section 402.5 according to its express requirements.

## I.   JURISDICTION

The private respondents initially contend that (1) jurisdiction for declaratory relief is unavailable because (a) the matter involves disguised appeals from orders of the Unemployment Compensation Board of Review (Board) and (b) this matter is within the exclusive jurisdiction of an administrative tribunal other than a court; (2) jurisdiction for injunctive relief is unavailable because petitioners have failed to exhaust administrative remedies available to them; and (3) this Court should not entertain this action since there are appeals pending before it involving the constitutional issues raised herein, with each of the petitioners being a party to at least one of

them. In addition, both the private and the government respondents contend that there is no actual controversy between themselves and the petitioners.

Private respondents' first argument involves Section 7541(c) of the Declaratory Judgment Act,[3] which provides that declaratory relief shall not be available with respect to any:

(2) Proceeding within the exclusive jurisdiction of a tribunal other than a court.

(3) Proceeding involving an appeal from an order of a tribunal.

Concerning the claim regarding Section 7541(c)(3), it is clear that the purpose of this subsection is to prevent the use of a declaratory judgment action as a vehicle for collaterally attacking a decision of an administrative tribunal. Here, however, the petitioners are not collaterally attacking the prior determinations of the Department's administrative tribunals that they were ineligible for benefits under Section 402.5. Rather they seek purely prospective relief in the form of a declaration that Section 402.5 and action taken thereunder is unconstitutional, justifying an injunction against future denial of benefits pursuant to said statute. Thus, the petition cannot be classified as a "disguised appeal" from the prior orders of the Department's administrative tribunals.

We must, however, agree with the private respondents' contention that the seventh count of the petition involves matters which are within the exclusive jurisdiction of the Department's administrative tribunals. While an administrative agency may not have exclusive jurisdiction over matters involving substantial constitutional questions as to the basic validity of its enabling legislation, *Myers v. Department of Revenue*, 55 Pa. Common-

---

[3] 42 Pa. C. S. §7541(c).

wealth Ct. 509, 423 A.2d 1101 (1980), the seventh count of the petition clearly does not involve any direct constitutional attack on the provisions of Section 402.5 authorizing denial of benefits to seasonal workers in the fruit and vegetable food processing industry during the off-season period nor on the procedures provided therein for seasonal determinations and review thereof. Rather the claims raised therein involve the construction and administration of the statute by the Department and its administrative tribunals. They can be summarized as follows:

(a) The Department does not have and has not proposed any rules or regulations that are relevant to or provide a rational basis for the resolution of any factors critical to the issues which must be decided in its determinations under Section 402.5.

(b) The government respondents do not require that employers make timely applications and have never rejected an application as being untimely, in spite of the fact that many have been filed less than 20 days prior to the start of the applicant's alleged 'normal seasonal period'.

(c) The application for seasonal determination does not pose questions or elicit information which would enable the Department to make a rational decision based on substantial evidence, on the issues critical to determinations under Section 402.5.

(d) The Department and its administrative tribunals do not determine whether or not a worker fits the definition of seasonal worker; rather they assume that every claimant is a 'seasonal worker' if he or she has worked for a seasonal employer during a 'normal seasonal period', without determining if the worker, in fact, performed canning or freezing services or

did other work not within the statutory definition.

(e) The Department considers a claimant to be a 'seasonal worker' and ineligible for benefits even if he or she performs seasonal work for 180 days a year or more, in all, but less than 180 days for any one individual 'seasonal' employer under Section 402.5.

Accordingly, the seventh count of the petition is dismissed.

The third count of the petition, however, consists of a series of allegations of various deficiencies in the procedures provided for seasonal determinations and review thereof which, according to the petition, violate petitioners' rights to procedural due process. Certain of the procedural aspects claimed to be deficient are controlled by the terms of the statute being attacked. These alleged deficiencies can be summarized as follows:

(a) Posting of the employer's application for seasonal determination is not a method reasonably calculated to give individual affected workers adequate notice of the fact that their employer is seeking such a determination.

(b) The employer's application for seasonal determination is posted at a time when no affected workers are at the work place to see them.

(c) Affected workers are not provided with an opportunity to be heard by the Department prior to its initial determination on the employer's application for seasonal status certification.

(d) Posting of the Department's notice of determination is not reasonably calculated to give individual affected workers actual notice of the determination.

(e) Notice of the denial of an employer's application or of a further employer appeal, which could result in reversal of the initial determination and the granting of seasonal status, is not required to be given to affected workers.

(f) The Department's notice of determination is not required to be posted within the time period during which an appeal therefrom must be taken or any specified time.

It is this Court's opinion that claims concerning such defects are substantial and, consequently, not within the exclusive jurisdiction of the Department's administrative tribunals. See: *Allegheny Ludlum Steel Corporation v. Public Utility Commission*, 67 Pa. Commonwealth Ct. 400, 447 A.2d 675 (1982). Accordingly, declaratory relief based on them may be granted if they are meritorious.

The following claims in the third count, however, are not direct constitutional attacks on the statute:

(a) The application for seasonal determination, as prescribed by the Department, does not inform affected workers of their right to be heard and to submit relevant information, both prior and subsequent to the Department's initial decision on the application.

(b) The application form does not adequately inform affected workers of the fact that they will not receive unemployment compensation benefits if the application is approved and they are determined to be 'seasonal workers' under Section 402.5.

(c) The application form does not advise affected workers of the statutory criteria that the employer must meet and which the Department will consider in making its seasonal determination.

(d) The application form does not elicit information from the employer-applicant which would enable the Department to make a rational finding and lawful decision on the issues on which its determination of seasonal status must be based.

(e) The notice of determination form implemented by the Department does not tell workers of their right to appeal from the determination.

(f) The notice of determination contains the misleading statement: 'THIS IS NOT A DETERMINATION OF CLAIMANT ELIGIBILITY OR EMPLOYER RELIEF FROM CHARGES'.

(g) The notice of determination contains the misleading statement that a 'seasonal worker . . . *may* be ineligible for benefits' during periods of unemployment outside of the 'normal seasonal period'.

(h) The Department does not give adequate reasons for its decisions and does not make definitive and specific findings of all essential primary and subordinate facts.

(i) The Department and its administrative tribunals presume that every unemployment compensation claimant is a 'seasonal worker' if he or she works for a 'seasonal operation' without determining if the claimant is, in fact, a 'seasonal worker', as defined by Section 402.5.

The Department, in the opinion of this Court, is competent to address all of these claims, some of which are substantially the same as those raised within the seventh count of the petition.

Going hand-in-hand with these arguments is the private respondents' contention that this Court lacks jurisdiction to grant the injunctive relief sought by the

petitioners because of petitioners' failure to exhaust administrative remedies provided by statute. However, for the same reasons that the Department's administrative tribunals do not have exclusive jurisdiction over those claims in the petition that have not been dismissed, this Court has jurisdiction to grant injunctive relief on those claims. *Borough of Green Tree v. Board of Property Assessments, Appeals and Review,* 459 Pa. 268, 328 A.2d 819 (1974).

The private respondents' next argument essentially is one of lis pendens. They contend that this Court should refuse to exercise jurisdiction over this matter because of the existence of appeals pending before this Court involving the constitutional issues raised herein.[4] It is alleged that at least one of the named petitioners has intervened in each of such appeals. We note, however, that in paragraph 45(a) of the petition it is alleged that petitioners Stine and Spielman have intervened in appeals which do not involve the issues raised in the present matter.

In *Greenberg v. Blumberg,* 416 Pa. 226, 206 A.2d 16 (1965), the Supreme Court held that a court should not entertain a declaratory judgment action where another action is pending in which the same persons are parties and in which the same issues may be adequately

---

[4] The appeals being referred to are: *Knouse Foods Cooperative, Inc. v. Unemployment Compensation Board of Review,* 2777 C.D. 1986; *Knouse Foods Cooperative, Inc. v. Unemployment Compensation Board of Review,* 2826 C.D. 1986; *Knouse Foods Cooperative, Inc. v. Unemployment Compensation Board of Review,* 2827 C.D. 1986; *Knouse Foods Cooperative, Inc. v. Unemployment Compensation Board of Review,* 2828 C.D. 1986; *Knouse Foods Cooperative Inc. v. Unemployment Compensation Board of Review,* 3685 C.D. 1986; and *Parker v. Unemployment Compensation Board of Review,* 404 C.D. 1987. *Bittinger v. Unemployment Compensation Board of Review,* 405 C.D. 1987, which had been pending before this Court was withdrawn upon the death of petitioner, Richard W. Bittinger.

adjudicated. Here, however, as stated above, not all of the named petitioners are parties to those pending appeals in which the constitutional issues raised herein are involved. Furthermore, there is no certainty that, in those pending appeals involving the constitutional issues raised here, to which at least one of the named petitioners is a party, that this Court will adjudicate such issues. It is possible that those appeals could be decided solely on non-constitutional grounds.

Therefore, it is the opinion of this Court that the existence of those pending appeals does not require this Court to decline jurisdiction over the present matter.

Finally, we have the contention of both the private and government respondents that the averments contained in the petition fail to establish an "actual controversy" between the parties. We disagree.

The stated purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. 42 Pa. C. S. §7541(a). It is remedial legislation and is to be liberally construed and administered. *Id.* Section 7533 of the Act, 42 Pa. C. S. §7533, provides in pertinent part:

> Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder.

Petitioners here have pled that they have been denied benefits by the Department at one time or another by the Department pursuant to Section 402.5. That statute is still in effect. Nothing is pled that indicates that the controversy has been resolved or that, in the future, the Department will not or cannot deny benefits to the petitioners during the off-season period if they have con-

tracts or reasonable assurances that they will be performing services in the fruit or vegetable food processing industry in the season following thereafter. It is our belief, therefore, that this case involves an unresolved, ongoing controversy. In addition, we believe that the issues raised herein indicate that uncertainty and insecurity exist with respect to rights under Section 402.5 and that an expedient determination of these issues would be consonant with the clear and explicit legislative intent expressed in the Declaratory Judgment Act. Therefore, a declaratory judgment is appropriate in this case.

For all of the above reasons, it is the conclusion of this Court that we have jurisdiction to grant both declaratory and injunctive relief upon those claims raised in the petition for review that have not been dismissed herein.

## II. STANDING

The private respondents also question by way of preliminary objections the ability of the petitioners to bring an action against those private respondents which do not employ any of them. It is contended that petitioners lack standing to bring an action against those private respondents. We agree.

The requirement that a party must be "aggrieved" as a prerequisite to maintaining an action in this Commonwealth is applicable to class actions. *Nye v. Erie Insurance Exchange*, 504 Pa. 3, 470 A.2d 98 (1983). A plaintiff in a class action who has not suffered an injury from the challenged conduct of a defendant cannot maintain a class action against that defendant. *McMonagle v. Allstate Insurance Co.*, 460 Pa. 159, 331 A.2d 467 (1967). In the present case, petitioners have failed to allege that they have been aggrieved by the

conduct of any of the private respondents except those which employed them.

Consequently, inasmuch as it appears from a review of the petition that private respondents, John F. Cope Co., Inc., Furman Foods, Inc., Benjamin Lipsitz Co., Kresge Farms Foods, Inc. and Welch Foods, Inc., do not employ any of the petitioners, petitioners lack standing to bring an action against them and they are hereby dismissed from this action.

### III. CONSTITUTIONALITY

The third group of preliminary objections are demurrers which go to the legal merits of this action, *i.e.,* the constitutionality of Section 402.5. Demurrers are not to be sustained unless the law says with certainty that no recovery is possible. *Goodheart v. Thornburgh,* 104 Pa. Commonwealth Ct. 385, 522 A.2d 125 (1987). The test is not whether the applicable law is clear and free from doubt but whether it is clear and free from doubt from the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. *Firing v. Kephart,* 466 Pa. 560, 563-64, 353 A.2d 833, 835 (1976). Any doubts about sustaining the demurrer are to be resolved against the objecting party. *Goodheart.*

On the other hand, however, lawfully enacted statutes are presumed to be constitutional and are not to be declared otherwise unless it "clearly, palpably and plainly" violates the constitutions of the Commonwealth or of the United States. *Cloonan v. Thornburgh,* 103 Pa. Commonwealth Ct. 1, 519 A.2d 1040 (1986). Furthermore, any doubts as to the statute's constitutionality are to be resolved in favor of sustaining the statute. *Id.*

With these principles in mind, we shall consider the various claims made by the petitioners as to why Section 402.5, and action taken thereunder, is unconstitutional.

## A.

In the first, fourth and seventh counts, petitioners claim that the provisions of Section 402.5 and action taken under the color thereof are in violation of the guarantees provided by Article III, Section 32 of the Pennsylvania Constitution,[5] Article I, Section I of the same charter,[6] and the Equal Protection Clause of the United States Constitution,[7] respectively. It has been held that the meaning and purpose of Article III, Section 32 is sufficiently similar to that of the Equal Protection Clause of the United States, so that similar treatment is warranted. *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 67 n.13, 436 A.2d 147, 155 n.13 (1981). Likewise, Article I, Section 1 has been considered to guarantee the citizens of this Commonwealth equal protection under the law. *See Fischer v. Department of Public Welfare,* 509 Pa. 293, 502 A.2d 114 (1985). Thus, the same analysis will be applied to determine whether a statute and actions taken under the color thereof violate both the federal and state guarantees of equal protection under the law.

---

[5] Article III, Section 32 provides in pertinent part:
The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law. . . .

[6] Article I, Section 1 provides:
All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

[7] The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides:
'[N]or [shall any State] deny to any person within its jurisdiction the equal protection of the laws.

Our Supreme Court, in the case of *Smith v. City of Philadelphia,* 512 Pa. 129, 137-38, 516 A.2d 306, 310-11 (1986), stated:

> Most recently in James v. SEPTA, 505 Pa. 137, 477 A.2d 1302 (1984), we observed that the Fourteenth Amendment does not absolutely prohibit the states from classifying persons differently and treating the classes in different ways. As this Court stated in Laudenberger v. Port Authority of Allegheny County, 496 Pa. at 68, 436 A.2d at 155 (1981), 'The concept of equal protection . . . demands that uniform treatment be given to similarly situated parties. . . . If classifications are drawn, then the challenged policy must be reasonably justified.' What counts as justification will depend upon which of three types a classification belongs to, what the governmental interest is in promulgating the classification, and the relationship of that interest to the classification itself. James v. SEPTA, 505 Pa. at 145, 477 A.2d at 1306. Different types of governmental interests and different degrees of closeness of relationship between the interest and the classification are required depending upon the type of classification involved.

In *Smith,* the three types of classifications were identified as: (1) classifications which implicate a suspect class or a fundamental right; (2) classifications implicating an "important", though not fundamental right or a "sensitive" classification and (3) classifications which involve none of these. 512 Pa. at 138, 516 A.2d at 311. Where the statutory classification in question falls into the first category, it has been held that the standard of review to be applied is that of strict scrutiny. If the classification falls into the second category, a heightened

standard of review is to be employed. Finally, if the classification falls into the third category, the statute will be sustained if it meets the "rational basis" test.

In the present case, the class involved (seasonal workers in the fruit and vegetable food processing industry) is not one which is suspect. Nor is the right affected fundamental, inasmuch as it is not provided expressly or implicitly by the terms of either the state or federal constitution. Thus, it is not necessary to apply a strict scrutiny standard. Likewise, it is the conclusion of this Court that a heightened standard of review need not be applied. The class involved is not one which, in the opinion of this Court, is "sensitive". Nor is the right involved one which is "important" in the constitutional sense. *See Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983). (The right to unemployment compensation benefits is not analogous to the right to welfare benefits, which the United States Court of Appeals for the Third Circuit found to be "important" in *Medora v. Colautti*, 602 F.2d 1149 (3rd Cir. 1979) in deciding to apply the heightened standard of review.) Therefore, the classification established by Section 402.5 must be upheld under the equal protection provisions of the state and federal constitutions if it "bears some rational relationship to a legitimate state end." *Martin.*

"A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it". *McGowan v. Maryland*, 366 U.S. 420, 426 (1961). The respondents contend that the differential treatment effected by Section 402.5 advances two objectives, both of which have been found to be legitimate government objectives. These are: (1) conservation of the unemployment compensation fund; *See Latella v. Unemployment Compensation Board of Review*, 74 Pa. Commonwealth Ct. 14, 459 A.2d 464 (1983); and (2) preservation of ex-

isting fruit and vegetable food processing jobs in the Commonwealth. *See Basehore v. Hampden Industrial Development Authority,* 433 Pa. 40, 248 A.2d 212 (1968). Clearly, the classification furthers both of these objectives. By denying benefits to seasonal workers who would otherwise be eligible, the unemployment compensation fund is assisted and preserved. Furthermore, it is done so at the expense of persons who, because of such assurances, are not available for suitable work at such time. *Cf. Chickey v. Unemployment Compensation Board of Review,* 16 Pa. Commonwealth Ct. 485, 332 A.2d 853 (1975). (Teachers having reasonable assurances of employment in the school year following summer vacation are not actually available for employment during summer vacation.) Likewise, with the reduction in the amount of benefits being paid to workers in such an industry during the year, companies engaged in such an industry are afforded the same advantage as that enjoyed by companies engaged in that industry in neighboring states which have similar seasonal worker provisions in their unemployment compensation laws. As a result, there is no temptation for companies engaged in such an industry in the Commonwealth to close down their operations here and relocate them in those neighboring states where the contribution rate is financially less burdensome. Consequently, jobs are preserved.

The petitioners in the first count of the petition apparently contend that the classification in Section 402.5 bears no rational relationship to the objective of the legislature because seasonal workers in the fruit and vegetable food processing industries are denied benefits during the off-season period if they have a reasonable assurance of having a job in the same industry in the following season, while workers who have work patterns similar to them are eligible to collect benefits during the off-season period, even though they have such

assurances. The fact that a classification may be underinclusive, however, does not invalidate the statute, since the legislature is not constitutionally required to eradicate an entire problem, but may proceed on a piecemeal basis. *See Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483 (1955).

In the fourth count of the petition, it is alleged that the guarantee of equal protection under the law is violated by Section 402.5 because it creates a situation whereby certain employees at a fruit or vegetable food processing plant are able to collect benefits during the off-season, despite having contracts or reasonable assurances of employment in the same industry the next season, while others performing services in the same plant or at a different plant operated by the same company are not. This argument, in essence, is one which attacks the differential treatment afforded to workers engaged in seasonal fruit and vegetable food processing industries and operations and those engaged in non-seasonal fruit and vegetable food processing industries and operations. It is the seasonal status of the industry or operation for which the employee performs services or the lack thereof that affects his eligibility for benefits during the off-season if he has a contract or reasonable assurance of employment with that industry or operation in the season thereafter. As we have recognized above, however, legitimate state purposes are advanced by reason of this differential treatment.

One final argument made by the petitioners in support of their claim of denial of equal protection is that Section 402.5 allows for a situation whereby employees of those private respondents who qualify for, apply for and obtain a seasonal determination in their favor are denied benefits during the off-season period if they have reasonable assurances of working in the next season, while employees of those private respondents who

qualify for but deliberately do not apply for such a determination are eligible to collect benefits during the off-season period, even if they have such assurances. We note, however, that Section 402.5 provides to all companies engaged in the fruit and/or vegetable food processing industry the opportunity to apply to have all operations which qualify as seasonal operations under the statute declared to be so. Any differential treatment that is afforded results because of the individual decisions of the various companies to seek a seasonal determination or to waive the benefits accompanying such a determination. Therefore, it cannot be said that the state has denied the petitioners equal protection under the law.

Accordingly, the respondents' demurrers to the petitioners' equal protection claims are sustained.

## B.

Claims of denial of substantive due process, as guaranteed by Article I, Section 1 of the Pennsylvania Constitution and the Due Process Clause of the United States Constitution,[8] are made by the petitioners in the fifth and sixth counts, respectively.

The test for determining whether or not a challenged social or economic law deprives someone of substantive due process is whether the legislation has a rational relationship to a valid state objective. *Whitling v. Unemployment Compensation Board of Review*, 95 Pa. Commonwealth Ct. 500, 505 A.2d 1101 (1986). Inasmuch as we have held above that legitimate state purposes are furthered by the classification implemented

---

[8] The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides:

No state shall . . . deprive any person of life, liberty, or property, without due process of the law.

within Section 402.5, it follows that petitioners' claim of denial of substantive due process must, like their equal protection claims, fail. Accordingly, the respondents' demurrers to this claim are sustained.

We note that petitioners, here, allege that Section 402.5 denies them substantive due process because it does not further the general purpose set forth in Section 3 of the Unemployment Compensation Law, 43 P.S. §752, *i.e.*, providing for security against unemployment and the spread of indigency for workers who are unemployed through no fault of their own. This argument, however, focuses only on the interests of the recipients of unemployment compensation. The unemployment compensation statute touches upon more than just the recipient. Any action with regard to disbursements from the unemployment compensation fund affects both the fiscal integrity of the fund and employers whose rate of contribution to the fund is dependent upon the amount of benefits paid to their employees. Petitioners in effect are urging this Court to consider only the needs of the employee seeking compensation. The decision of the weight to be given the various effects of the statute, however, is a legislative decision. This Court may not sit as a super-legislature to judge what constitutes wise economic or social policy. *See Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471 (1977).

## C.

In the second count of the petition, it is alleged that the legislature, in enacting Act 30 of 1985, failed to comply with the provisions of Article III, Section 1,[9]

---

[9] Article III, Section 1 provides:
No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose.

$2,^{10}$ $3,^{11}$ and $4^{12}$ of the Pennsylvania Constitution. Before examining the legal sufficiency of this count, we should first set forth the legislative history of the Act, as alleged by the petitioners.

Act 30 of 1985 had its genesis in House Bill 1042 (1985 Session). The original version of this bill, bearing Printer No. 1200, was introduced in the House of Representatives on April 24, 1985. It was entitled an act "creating and empowering the Agricultural Product Development Commission; and making an appropriation." The House amended the bill and the amended version, bearing Printer No. 1541, secured final passage in the House on June 11, 1985 after being considered on three separate days. It bore the same title as the original version except that the word "Council" was inserted in place of the word "Commission". The purpose of the bill, as set forth in Section 2, was to "increase the impact of agriculture by establishing a council" which was to be given certain powers and duties to act for the "express purpose of enhancing Pennsylvania agriculture and its products by expanding existing agribusiness, by promoting food products which are grown or processed in Pennsylvania and by promoting the image of Pennsylvania as an agricultural state." The bill did not purport to amend, made no reference to, and had no effect upon any existing law, including any provision of the unemployment compensation statute.

---

[10] Article III, Section 2 provides:
No bill shall be considered unless referred to committee, printed for the use of the members and returned therefrom.
[11] Article III, Section 3 provides in pertinent part:
No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, . . . .
[12] Article III, Section 4 provides in pertinent part:
Every bill shall be considered on three different days in each House. . . .

In the Senate, the entire title and body of the version of the bill that was sent from the House were deleted and replaced in several amended versions bearing Printer Nos. 1757, 1837, 1895, 1958 and 1984. This last version of the bill was the one passed by the Senate on June 27, 1985. It was entitled in pertinent part: "An act . . . providing for benefits for certain seasonal workers. . . ." The very next day, the House concurred in the amendments made by the Senate.

Turning first to the claim of the legislature's failure to comply with Article III, Section 3, we initially note that the Attorney General contends that this is not a justiciable issue under the enrolled bill doctrine announced in cases such as *Speer v. Plank Road Co.*, 22 Pa. 376 (1853) and *Kilgore v. Magee,* 85 Pa. 401 (1877). Under that doctrine, a bill which has been certified by the Speaker of the House and the presiding officer of the Senate as having been passed, signed by the Governor and filed with the Secretary of the Commonwealth is conclusively presumed to have been legally adopted and a court will not go back of the signatures of these three officers to determine whether the bill was enacted in compliance with the constitutional requirements. R. E. Woodside, *Pennsylvania Constitutional Law* 348 (1985). With a claim of a violation of Article III, Section 3, however, we need not look beyond the face of the act to determine whether said constitutional provision has been violated. Therefore, the enrolled bill doctrine would not preclude us from examining such a claim.

Recently our Supreme Court discussed the purpose of Article III, Section 3 and what said constitutional provision requires:

[T]he primary purpose of Article III, Section 3, was to provide adequate notice both to the members of the General Assembly and to the public of the subjects contained in proposed acts

so as to prevent passage of secretive measures. . . . In essence, Article III, Section 3 prohibits legislative draftsmen from proposing acts with titles calculated to mislead and deceive. . . . It assures against the practice of the intentional masking of acts with misleading or 'omnibus' titles. . . . Nevertheless, Article III, Section 3 was not intended to serve as a shackle upon the hands of the legislature.

. . . .

Under Article III, Section 3 a title is constitutional if it puts a reasonable person on notice of the general subject matter of the act. . . . Thus, it is elementary that Article III, Section 3 does not require a title to be an index or synopsis of an act's contents. . . . All that is required under this section is that the title contain words sufficient to cause one having a reasonably inquiring mind to examine the act to determine whether or not he or she may be affected by it.

. . . .

Given the purpose of Article III, Section 3, it can be deduced that one who seeks to declare a title unconstitutional under this provision must demonstrate either (1) that the legislators and the public were actually deceived as to the act's contents at the time of passage, or (2) that the title on its face is such that no reasonable person would have been on notice as to the act's contents.

*In Re Com., Department of Transportation*, 511 Pa. 620, 626-27, 515 A.2d 899, 902 (1986) (citations omitted).

In the present action, it is not alleged in the petition that the legislators or the public was deceived as to the contents of House Bill 1042 at the time of its passage.

Rather, it is contended that the subject and purpose of this bill was not clearly stated in its title.

It is the opinion of this Court, however, that the phrase "providing benefits for seasonal workers" provided sufficient notice to seasonal workers, who were able to collect unemployment compensation benefits during the entire year, that their ability to collect benefits was affected. The reasonably inquisitive person, upon reading the title to the bill, would become curious as to what benefits were now being provided.

Since the title provided sufficient information, so that reasonably inquisitive people would have been alerted that their rights were being affected by the legislation, it is our conclusion that no violation of Article III, Section 1 has been alleged.

In *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), our Supreme Court addressed a claim of violation of Article III, Section 1 of the state constitution. After a review of that case and a comparison of its facts with the facts in the present case, it is the conclusion of this Court that petitioners have failed to allege a violation of Article III, Section 1.

In the present action, it is not alleged that there was any change in the purpose of House Bill 1042 after it left the Senate. Furthermore, that purpose, as we have held above, was clearly expressed in the bill's new title. Under similar circumstances, the Supreme Court in *Consumer Party* found that Article III, Section 1 had not been violated. As stated by the Court:

> Here the bill in final form, with a title that clearly stated its contents, was presented to each house for its consideration and adoption. Under these circumstances there is no basis for sustaining a challenge under Article III, Section 1.

*Id.* at 181, 507 A.2d at 335.

This now brings us to the remaining claims of violations of Sections 2 and 4 of Article III. Once again, the Attorney General contends that, under the enrolled bill doctrine, these claims are non-justiciable. Prior to our Supreme Court's decision in *Consumer Party*, we would have agreed with this contention. In *Consumer Party*, however, it was stated that, where parties to an action in which claims of Article III violations are made agree as to the facts concerning the legislative history of an act, judicial intervention is not only appropriate but it is mandatory. *Id.* at 180, 507 A.2d at 334. Therefore, unless the facts alleged by the petitioners fail to establish a violation of either Sections 2 or 4, the demurrer to the second count of the petition must be overruled and the respondents must at least reply to the allegations made therein.

The factual basis for the claimed violations of Sections 2 and 4 of Article III is the failure of the House to refer the version of House Bill 1042 that had been sent back to it by the Senate to a committee before voting on it and to consider said version of that bill on three separate days. The private respondents respond to this claim by alleging that the version of House Bill 1042 that was sent from the House to the Senate had been referred to a committee, had been considered on three separate days and, thus, had been passed in compliance with Sections 2 and 4 of Article III. Thus, the issue is whether a bill which has been amended in one House must, after having been sent back to the House in which it originated, be approved by that House in compliance with Article III. This appears to be a question which has not been answered by the courts of this state. Thus, we turn to the decisions of courts of other states for guidance as to what the rule should be on this matter.

The rule, as followed by other jurisdictions, is that an amended bill need not be referred to committee or considered on three separate days in the House from

which the bill which was amended originated, if the amendments are germane to, and do not wholly change, the general subject of the bill. *See People ex rel. County Collector v. Jerri, Ltd.,* 40 Ill. 2d 293, 239 N.E. 2d 777 (1968); *Hoover v. Board of County Commissioners, Franklin County,* 19 Ohio St. 3d 1, 482 N.E. 2d 575 (1985); *Van Brunt v. State,* 653 P. 2d 343 (Alaska Ct. App. 1982); *People v. Clopton,* 324 N.W. 2d 128 (Mich. Ct. App. 1982).

The general subject of the version of House Bill 1042 that was sent to the Senate for approval was, as previously stated, agricultural business in the Commonwealth, the general purpose being the increase of the impact of said business. It is the opinion of this Court that, by amending a bill to provide for what is in effect an unemployment compensation tax advantage to companies engaged in canning and freezing of fruits and vegetables, the Senate did not change the subject matter of said bill. By reducing the unemployment compensation tax rate for seasonal fruit and vegetable food processing operations in the Commonwealth, other fruit and vegetable food processing operations may be attracted into conducting business in the Commonwealth. Thus, agriculture in the Commonwealth would be assisted.

Accordingly, the respondents' demurrer to claims of violations of Article III, Sections 2 and 4 are sustained.

## D.

The third count of the petition, as we have previously noted, involves claims by the petitioners that deficiencies exist in the procedure established by Section 402.5 for seasonal determinations and review thereof which violate their constitutional rights to procedural due process, as well as their rights under Section 504 of the state Administrative Agency Law, 2 Pa. C. S. §504,

and Section 303(a)(3) of the Social Security Act, 420 U.S.C. §503(a)(3) (1982).

Under the statute, an employer seeking a seasonal determination must file an application therefor on a form prescribed by the Department with the Office of Employment Security (OES) at least twenty days before the estimated beginning date of the upcoming season and to simultaneously post copies of the application that has been filed in a sufficient number of locations throughout the plant. OES, based on the information contained in the application, then will determine whether the operations for which the seasonal determination is sought is a seasonal operation. The statute, however, makes no provision for workers employed in that operation to be be heard by the OES prior to the time that its determination is made. Nor does it make any provision for consideration of written documentary evidence or responses submitted by those employees at that time. After OES has provided the employer with its determination notice, the employer must post copies of the notice in a sufficient number of places in the workplace, if its industry or operation has been determined to be seasonal. No provision is made as to the time limit within which this notice is to be posted. Nor does the statute make any provision for posting copies of the determination if the industry or operation is not found to be seasonal. The determination is then to be reviewed in the same manner and to the same extent as any other determination made under the Unemployment Compensation Law.

The petitioners first contend that, under the above procedure, their constitutional rights and their rights under the above mentioned statutes are violated because they are not provided with adequate notice of the filing of an application for seasonal determination and an opportunity to be heard in regard to said application

before the OES has made its determination. A crucial premise upon which this particular argument must rest is that the OES's determination is an adjudication of their rights to collect unemployment compensation benefits. This Court, however, would not so characterize the OES's determination.

An adjudication has been defined as any final order, decree decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligation of any or all of the parties to the proceeding in which the adjudication is made. 2 Pa. C. S. §101. In determining that a company's entire business or a portion thereof is a seasonal industry or operation, the OES has not made such a determination. It has merely made a determination of one of the issues relevant to claimant's ineligibility under Section 402.5 against the claimant. This preliminary determination, *standing by itself,* in no way affects the petitioners' rights to collect benefits, since petitioners may still be able to collect benefits if it is later determined by the OES, after they have filed for benefits, that they do not have reasonable assurances of performing services for a seasonal fruit or vegetable food processing operation or that they have base year wages attributable to employment in a non-seasonal industry and meet the eligibility requirements set forth in the statute.

Since it is the opinion of this Court that the OES's seasonal determination does not constitute an adjudication of the petitioners' right to collect unemployment compensation benefits or action depriving petitioners of that right, we conclude that neither the U.S. Constitution, the state Administrative Agency Law nor the federal Social Security Act requires that the petitioners be given notice of an employer's filing of an application for seasonal determination and an opportunity to be heard

by the OES in regard to said application, prior to a decision on it. It is our view that the posted notice required by the statute is given as a matter of courtesy to the employees of the applicant for seasonal determination and, being such, its inadequacy in informing those individuals of the filing of the application does not violate any of their constitutional or statutory rights.

What is required by the aforementioned statutes and the constitution is that each worker be given notice of the denial of his application for benefits based on his ineligibility under Section 402.5 and afforded a hearing prior to the time that the OES's determination of ineligibility becomes final, *i.e.*, prior to the time that the Board either affirms the referee's affirmance or reverses the reversal of the OES's determination or the worker fails to file a timely appeal from that determination to the referee, or from the referee's decision to the Board. It is only at that time that all issues relevant to the workers' ineligibility under Section 402.5 are determined with finality. The procedure which is prescribed by the Unemployment Compensation Law (Law) for review of an OES determination of ineligibility, clearly satisfies this requirement. Under this procedure, the claimant must, under Section 501 of the Law, 43 P.S. §821, be notified by individual written notice that the OES has denied his application for benefits and the grounds therefor. If the claimant files a timely appeal from that determination, he must, under Section 502 of the Law, 43 P.S. §822, then be afforded a de novo hearing before a referee, at which he may present testimony and documentary evidence relevant to the issues that had been ruled upon by the OES. This would include the issue of whether the operation for which the claimant performs services is, in fact, a seasonal operation, for a reason which will be explained hereinafter. This notice and opportunity to be heard are afforded prior to

the time that the Board takes its adjudicatory action in regards to the claimant's eligibility.

Petitioners also contend that, under the above procedure, their rights to file administrative appeals, as well as an appeal to this Court, and their ability to participate in appeals filed by the private respondents from unfavorable determinations are undermined because they are not given adequate notice of seasonal determinations in favor of the private respondents and because the statute makes no provision for the giving of notice to them of seasonal determinations against the private respondents and of appeals by the private respondents from such determinations or from adverse rulings by either the referee or the Board. This argument is also without merit.

The only action that a worker affected by the enactment of Section 402.5 need appeal from is the denial of his application for benefits based on a determination that he is ineligible to collect them under that statute. It is the only action which affects his right to collect those benefits. As we have held, a determination that the operation for which the affected worker performs services is seasonal does not, by itself, affect that right. Consequently, the worker need not appeal from that determination or be concerned with any appeal taken by an employer from a determination to the contrary and his failure to do so will not prevent him from litigating that issue in the context of a referee's hearing on the denial of his application for benefits, should such an appeal be necessary. It follows, therefore, that concerns about lack of adequate and timely notice of seasonal determinations and employer appeals therefrom are unwarranted. Petitioners need only to be concerned about receiving timely and adequate notice of rulings made on their applications for benefits.

Under the procedure provided for determination of applications for benefits and review thereof, a worker is

always adequately informed of the determination made at each stage of the administrative procedure, as well as of any appeal filed by his employer from any such determination. Section 501 of the Law requires that the worker be given individual written notice of the OES's denial of his benefits under Section 402.5. If he appeals from that determination, he must, under Section 502 of the Law, be given individual written notice of the decision of the referee. If the referee reverses the OES, the worker must be given individual written notice by the Board of any appeal filed by his employer therefrom. 34 Pa. Code §§101.103, 101.104. Both parties must then, under Section 504 of the Law, 43 P.S. §824, be given individual written notice of the Board's decision. Finally, where an appeal from the Board's decision is filed with this Court, the appellant is required under the Rules of Appellate Procedure to serve a copy of the petition for review upon the respondent.

Accordingly, we would sustain the respondents' demurrers to the petitioners' procedural due process claims.

### E.

The final constitutional infraction alleged by the petitioners appears in the fifth count of the petition. In addition to their claim that the enactment of Section 402.5 is a denial of substantive due process, the petitioners allege in that count that the legislature has improperly delegated its power to make law to the private respondents by way of the subject statute. The argument made is that, because the private respondents are able to affect the petitioners' status as either seasonal or non-seasonal workers by way of their decisions on such matters as the number of days that employees work, the type of services employees perform and the number of days that plants perform processing operations, as well

as their exercise of the option to either apply for certification of seasonal status or waive the benefits accompanying such certification, it is apparent that they have been given the power to make law. This argument demonstrates a misunderstanding on the part of the petitioners of this constitutional doctrine.

The prohibition against delegation of legislative power requires that the basic policy choices involved in legislative power actually be made by the legislature as constitutionally mandated. *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 11, 331 A.2d 198, 202 (1975). This doctrine serves two interrelated purposes. First, it seeks to insure that basic policy choices be made by duly authorized and politically responsible officials. Second, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 212, 346 A.2d 269, 291 (1975).

The statute under consideration does not invest the private respondents with the power to make law. That power was exercised by the legislature with the enactment of the statute. Section 402.5 constitutes a standard which serves both of the above-mentioned purposes of the delegation doctrine. It articulates a "basic policy choice" made by the General Assembly—namely, that unemployment compensation benefits are to be denied to a specified class of employees under specified circumstances—and confines the exercise of discretion on the part of the Department, which has been charged with the administration of the unemployment compensation program in the Commonwealth, by means of specific definitions of pivotal statutory terms such as "seasonal worker", "seasonal operation" and "seasonal industry".

In making decisions concerning plant operation and employee utilization, the private respondents are not

making law; rather they are shaping the facts to which the law made by the legislature will be applied. Their ability to do so is not prohibited by the state constitution. Likewise, the fact that seasonal workers, who would otherwise be ineligible for benefits, are able to collect benefits if their employer does not apply for a seasonal determination does not establish a delegation of legislative power to the private respondents. A statute is not unconstitutional merely because those to whom the statute provides a benefit have the opportunity to decline that benefit. *See New Motor Vehicle Board of California v. Orin W. Fox Co.*, 439 U.S. 96 (1978).

Therefore, the respondents' demurrers to the petitioners' claim of improper delegation of legislative power are sustained.

## CONCLUSION

Having sustained the respondents' demurrers to all those claims upon which this Court has jurisdiction to grant declaratory and injunctive relief, for reasons which have been set forth in the preceding section, this action is hereby dismissed.[13]

## ORDER

Now, March 31, 1988, the petition for review is hereby dismissed.

---

[13] Because we have declined to exercise jurisdiction over the claims raised in the seventh count of the petition, we need not address the government respondents' preliminary objection to that count in the nature of a motion for a more specific pleading or the private respondents' demurrer thereto. Furthermore, because we have sustained the demurrers to the six remaining counts, we need not address the private respondents' preliminary objection which questions the propriety of certifying this matter as a class action.