## Commonwealth v. Jackson

*Paul H. Millin,* district attorney, for the Commonwealth.

*H. John Drayer,* for defendant.

WOLFE, *P.J.,* July 13, 1990 — Defendant challenges the constitutionality of section 4 of Act no. 1989-24 styled: Catastrophic Loss Benefits Continuation Fund and Traffic Violation Surcharge. Specifically the act, as relevant herein, provides:

"(a) *Creation* — The Catastrophic Loss Benefits Continuation Fund is hereby created to provide funds necessary to pay catastrophic loss benefits under section 1798.2 (relating to transition).

"(b) *Composition* — The Catastrophic Loss Benefits Continuation Fund shall be composed of funds transferred from the Catastrophic Loss Trust Fund, funds contributed pursuant to section 6506 (relating to surcharge) and funds earned by the investment and reinvestment of such funds. The funds shall be held in trust, be deposited in a separate account, and be the sole and exclusive source of funds for the payment of catastrophic loss benefits under section

1798.2 and the administration of the catastrophic loss benefits under section 1798.2 and the administration of the Catastrophic Loss Benefits Continuation Fund."

Section (c) provides the fund and all income earned by it shall not become part of the General Fund (of the Commonwealth) or Motor License Fund.

Factually, defendant was cited for violation of 75 Pa.C.S. §4942(a) by operating a motor vehicle in excess of the maximum allowable gross weight. Defendant was fined $75 under the Motor Vehicle Code, $10 under the Emergency Medical statute, court costs, and $150 under the Catastrophic Loss Benefits Continuation Fund.

Defendant argues this act violates Article I, section 13 of the Pennsylvania Constitution, which states:

"Excessive bail shall not be required, nor excessive fine imposed, nor cruel punishment inflicted."

Defendant specifically argues the $150 surcharge is no more than a bailout of a bankrupt Catastrophic Loss Trust Fund (CAT Fund) by imposing a fiscal penalty on a statutory overweight fine, the results of which is not to protect the highways or safety of the citizens of the Commonwealth, but rather is a fiscal surcharge unrelated to the overweight violation. Moreover, defendant argues the $150 surcharge is applied indiscriminately whether a vehicle is 865.5 pounds overweight (as was the case here) or 8,000 pounds overweight.

We have no difficulty in arriving at the conclusion the surcharge is purely fiscal in nature; however, it is not totally unrelated to an overweight vehicle. It is the obvious intent of the legislature to create a fund to pay for catastrophic losses of the motoring public in this Commonwealth and this clearly cannot be

couched under the term "fine." Nonetheless, we cannot conclude the surcharge is unconstitutional for that reason. The sovereign has a clear mandate to protect its citizens from economic loss from injuries incurred by others violating the Motor Vehicle Code. Overweight vehicles violate the Motor Vehicle Code. The police power of the Commonwealth in this regard cannot be questioned. There are ample statistics to support the legislation in that annually there are approximately 50,000 deaths throughout the United States caused by the motor vehicle. Property loss and permanent maiming of individuals is incalculable.

Nor can we agree with defendant that due to the indiscriminate imposition of the surcharge it is constitutionally infirm. The surcharge applies without exception, irrespective of the overweight amount; thus there is no discrimination against highway truck users; however, the fine imposed is determined by the Vehicle Code based upon the amount of overweight and the type of vehicle involved. In *Commonwealth v. Smith,* 409 Pa. 521, 187 A.2d 267 (1963), the court held a fine of $4,350 for overweight of a tractor-trailer was not unconstitutional for violation of Article I, section 13 of the Pennsylvania Constitution. The court, citing *Commonwealth v. Burall,* 146 Pa. Super. 525, 22 A.2d 619 (1941) and *McDonald v. Pa. R.R. Co.,* 219 F.2d 524 (3d Cir. 1954), observed the purpose of the overweight provision of the Vehicle Code is to protect the highways of the Commonwealth from damage and to insure the safety of those traveling upon the highways. The court found a previous fine of $50 imposed for each violation, irrespective of the amount of overweight, was not serving this function since profits accruing from the excess loads more than compensated for the penalty inflicted.

Instantly, the surcharge is related to the use of the highways in the Commonwealth. The imposition of the surcharge is applicable for all motor-vehicle violations and thus not limited to overweight violations (75 Pa.C.S. §6506). We conclude that treating the surcharge as an additional monetary penalty is not in violation of the Pennsylvania Constitution, in that it is not excessive when considered in balance with the interest of the Commonwealth in its attempt to make whole those injured on its highways.

Defendant also argues the act is in violation of Article III, sections 1 and 4 of the Pennsylvania Constitution. In this regard defendant submits the act originated as "Senate Bill 274" but when the bill was sent to the House of Representatives it was transformed from a "permit" provision of the Vehicle Code to a "revenue bill" to fund the "failed CAT fund." Defendant further argues the Senate, after receiving the bill from the House, concurred in the House amendments without considering the revised bill on three different Senate days, which was in violation of Article III, section 1 of the Pennsylvania Constitution:

"No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either house, as to change its original purpose."

Defendant also argues this violated Article III, section 4 of the Pennsylvania Constitution, providing, inter alia:

"Every bill shall be considered on three different days in each house."

Defendant's exhibit C, submitted as an exhibit to defendant's brief, purports to support the defendant's argument. By review of this exhibit we cannot make that determination; however, even accepting defendant's argument, it is apparent from the

exhibit both houses considered the bill. We have hesitated make the determination defendant's position is correct in that the bill was not considered three times by the Senate, because exhibit C is not that clear. However, it does appear the bill was before the House at Printer's Bill on three occasions, then moved to the Senate and the Senate then considered the bill three times. Finally, the bill returned to the House and the picture of the bill concludes the House concurred in Senate amendments to House amendments June 30, 1989. The bill was signed in the Senate on June 30, 1989; signed in the House on June 30, 1989; and in the hands of the governor on July 1, 1989. Last day for action was July 11, 1989 and the bill was approved by the governor on July 1, 1989, Act no. 24.

We find no primary changes in the purpose of the bill, and the caption clearly states in Printer's no. 1408:

"An act amending Title 75 (Vehicles) of the Pennsylvania Consolidated Statutes, creating the Catastrophic Loss Benefits Continuation Fund for payment of certain catastrophic loss benefits; providing for surcharge for certain offenses to provide monies for the fund, and further providing for conditions of permits."

Defendant relies on *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania,* 510 Pa. 158, 507 A.2d 323 (1986) for the legal tenet neither the House nor Senate may violate Article III, section 1, of the Pennsylvania Constitution as such was established to prevent corrupt legislation. We have no quarrel with defendant's stance in this regard. However, the court there clearly found that the legislature did not violate Article III, section 1 in passing the Public Official Compensation Law, as there was no change in the bill's purpose after it left

**330**

the committee, and that object was clearly stated in the new title. Thus, the court found that although the title of the bill had been altered by agreement of the committees, the parties had agreed and stipulated the purpose of the bill did not change after the bill left the committee and when it was presented for final passage before both houses. The essence of the holding is neither the House or Senate may alter or change the primary purpose of a bill (heading)' without the consent of the other body. The court, again setting down the burden one carries in attacking the constitutionality of a statute, cited *Pa. Liquor Control Board v. The Spa Athletic Club,* 506 Pa. 364, 485 A.2d 732 (1984):

"The strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act have been so often stated as to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably and plainly violates the constitution, and any doubts are to be resolved in favor of a finding of constitutionality." (citations omitted)

Thus, the court found the language of Article III, section 1, albeit clearly mandatory, nonetheless was not applicable.

Irrespective of the foregoing, in *Parker v. Dept. of Labor and Industry,* 115 Pa. Commw. 93, 540 A.2d 313 (1988), the court, finding no applicable cases in this Commonwealth, followed sister jurisdictions and held:

"The rule, as followed by other jurisdictions, is that an amended bill need not be referred to committee or considered on three separate days in the house from which the bill which was amended originated, if the amendments are germane to, and do not wholly change the general subject of the bill." (citations omitted)

Instantly, "exhibit C" clearly shows the bill was considered three times in the House, and after amendment on June 29, 1989, three times in the Senate, the Senate concurring in the House amendment as amended by the Senate June 30, 1989, and finally in the House with the House concurring in the Senate amendment on June 30, 1989. At no time was the primary purpose of the bill changed other than one topic matter in the caption of the bill.

We therefore conclude by our review of that the history of Act 24 does not violate Article III, section 1 of the Pennsylvania Constitution as clearly the primary purpose of the bill was intact throughout its history, was not altered by either body of the legislature without the other having knowledge of the amendment, and ultimately both House and Senate concurred in the amendments. We therefore reject defendant's argument in this regard.

For these reasons we enter the following

## ORDER

And now, July 13, 1990, defendant's appeal from summary conviction is dismissed; costs to be borne by defendant.